HARDER'S FIRE PROOF STORAGE AND VAN COMPANY, Appellant, *vs.* THE CITY OF CHICAGO, Appellee.

*Opinion filed June 18, 1908.*

1. CONSTITUTIONAL LAW—*city may be authorized to impose license fees for revenue.* In Illinois the legislature may authorize a license fee to be imposed, and the fee for such license collected, with a view to revenue only; and the fact that the act of 1907, and the Chicago Wheel Tax ordinance based thereon, provide that the vehicle license fees shall be kept in a separate fund for street purposes does not render the statute and ordinance unconstitutional.

2. SAME—*legislature may exercise any power not prohibited by constitution.* The constitution of Illinois is a limitation upon and not a grant of power to the legislature, and the legislature has the right to exercise any power not prohibited by the State or Federal constitution.

3. SAME—*legislature may authorize municipal corporations to impose vehicle tax.* The power of the legislature to grant to the municipalities of the State the right to exact a license fee from all persons, firms or corporations using wagons or vehicles upon their streets is not limited by the constitution, except that the power shall be exercised by general law, uniform as to the class upon which it operates.

4. SAME—*legislature may restrict the right to use the streets to a privilege.* Prior to the amendment of 1907 to clause 96 of section 1 of article 5 of the City and Village act the use of streets was a common right, which was open and free to all without charge and without toll, and upon this right the city had no power to impose a license tax; but by said amendment such right was restricted to a privilege, and a municipal corporation may impose a license fee upon wagons or other vehicles using the streets. (*City of Chicago* v. *Collins,* 175 Ill. 445, distinguished.)

5. SAME—*a vehicle tax is not double taxation.* The owner of vehicles used upon the public streets may be required to pay an *ad valorem* tax upon such vehicles as property, and he may also be required to pay an occupation tax if he uses such vehicles in his business; and the fact that he has paid such taxes does not preclude the imposition of a license fee upon such vehicles for the privilege of using the streets, as such taxes and fees are not upon the same thing, and hence are not double taxation.

6. SAME—*Vehicle Tax act of 1907, and Chicago ordinance based thereon, are valid.* The amendment of 1907 to clause 96 of section 1 of article 5 of the City and Village act, authorizing the imposi-

tion of a license fee upon wagons or other vehicles conveying loads upon the streets, and the Chicago ordinance based thereon, requiring a license fee from all wagons or vehicles used in transporting persons or property upon the streets, are constitutional and valid.

7. MUNICIPAL CORPORATIONS—*Vehicle Tax act of 1907 applies to both cities and villages.* The Vehicle Tax act of 1907, which consists of an amendment to clause 96 of section 1 of article 5 of the general City and Village act, applies to the president and board of trustees in villages as well as to the city council in cities.

CARTWRIGHT, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. G. A. CARPENTER, Judge, presiding.

This was a bill in chancery filed by Harder's Fire Proof Storage and Van Company, a corporation, on its own behalf and on behalf of all other persons, firms and corporations similarly situated who desired to join therein and pay their proportionate share of the cost of the litigation, in the circuit court of Cook county, against the city of Chicago, in which it was alleged that the complainant was engaged in the teaming business in the city of Chicago, carting and removing furniture and other merchandise, and was using daily upon the streets of Chicago, in the carrying on of its business, twenty vans or wagons; that in the city of Chicago there were in daily use upon the streets of said city upwards of seventy-five thousand other vehicles, of the value of more than $3,000,000, owned by many thousands of different persons, firms and corporations; that the legislature of the State of Illinois had amended section 1 of article 5, chapter 24, of the Revised Statutes of said State, so that the same now reads as follows: "The city council in cities, and president and the board of trustees in villages, shall have the following powers: * * * Ninety-sixth— To direct, license and control all wagons and other vehicles, conveying loads within the city, or any particular class of such wagons, and other vehicles, and prescribe the width

and tire of the same, the license fee when collected to be kept as a separate fund and used only for paying the cost and expense of street or alley improvement or repair;" that the city of Chicago, in pursuance of the power claimed to have been conferred upon its city council by said amendment, had passed an ordinance, a portion of which is as follows:

"Sec. 1. That it shall be unlawful for any person, firm or corporation to use, or to cause or permit any of his or its agents or employees to use, any wagon or other vehicle in the transportation of persons or property upon the streets, avenues or alleys of the city unless such wagon or vehicle be licensed, as hereinafter provided: *Provided, however,* that this ordinance shall not be construed as applying to street cars running on metallic rails.

"Sec. 2. That any person, firm or corporation desiring a license for any such wagon or vehicle shall file an application with the city clerk, upon a form provided by him, setting forth the name and address of the applicant, a description of the wagon or vehicle for which the license is desired and the place where such wagon or vehicle is to be kept when not in use; also the number and kinds of other wagons or vehicles kept by said applicant at such place, and such other information as may be prescribed. Such application shall be transmitted to the mayor, and upon the payment by the applicant of the license fee hereinafter provided to the city collector, the mayor shall issue or cause to be issued a license, which shall be attested by the city clerk, authorizing the use of such wagon or vehicle within the city until the expiration of such license.

"Sec. 3. That the license fees to be paid annually to the city collector shall be as follows: One-horse wagon or vehicle, $5; two-horse wagon or vehicle, $10; three-horse wagon or vehicle, $15; four-horse wagon or vehicle, $25; six or more horse wagon or vehicle, $35; automobiles with seats for two persons, $12; automobiles with seats for more

than two persons, exclusive of trucks, coaches and buses, $20; automobile trucks, coaches and buses, $30. All such licenses shall expire on the thirtieth day of April following the date of issue, and when issued for a period of less than one year, the fee to be paid for the unexpired license period shall be the proportionate part of the annual rate fixed by the ordinance, but no fee shall be less than one-fourth of the annual rate. All revenues derived from such license fees shall be kept as a separate fund and used only for paying the cost and expenses of street or alley improvement or repair.

"Sec. 4. That upon the issuance of said license the city clerk shall deliver to the applicant a metal plate bearing a number and the name of the class to which said wagon or vehicle belongs and the year for which said license is issued, and it shall be the duty of such applicant to affix such plate in a conspicuous place upon the right-hand side of said wagon, vehicle or horse, where it can be readily seen. And it shall be unlawful for any wagon or vehicle, although duly licensed, to be used upon the streets, avenues or alleys of the city unless such plate is attached thereto: *Provided, however,* that it shall not be necessary for owners of automobiles to have the metal plate bearing a number provided for in this section attached to their automobile: *And provided further,* that it shall not be necessary for any wagon or vehicle to have the aforesaid metal plate attached to it except when actually in use upon the streets, avenues or alleys of the city.

"Sec. 5. That any person, firm or corporation violating any of the provisions of this ordinance shall be fined not less than five dollars ($5) nor more than one hundred dollars ($100) for each and every offense; and each day any wagon or vehicle is used upon the streets, avenues or alleys of the city without having procured a license and without having complied with the provisions of this ordinance shall be considered a separate and distinct offense."

This ordinance the city was about to enforce against the complainant and other persons, firms and corporations similarly situated as the complainant, and the statute as amended, and ordinance, it was averred, were unconstitutional and void, and the city was by said bill sought to be enjoined from enforcing said ordinance. A demurrer was interposed to the bill, which was sustained, and the complainant having elected to stand by its bill, a decree was entered dismissing the same for want of equity, and the complainant has prosecuted an appeal to this court to review the action of the circuit court.

ROBERT W. DUNN, for appellant:

The statute in question is a revenue measure and not a regulatory one, and in reality authorizes the levying of a special tax for municipal improvements rather than a license for the regulation of an occupation or business. Being a tax, it must be *ad valorem* if upon property. Const. of 1870, art. 9, sec. 1; 2 Cooley on Taxation, (3d ed.) 1126, 1127; Tiedeman on Lim. of Police Power, 265.

If the measure could by any possibility be construed as a license, the fee or tax can only be justified as compensation for the enjoyment of a privilege or a franchise. Tiedeman on Lim. of Police Power, 281.

The use of the streets in Illinois is not a privilege or a franchise, being a right inherent in every citizen. The municipality holds its streets in trust for its citizens. *Carter* v. *Chicago,* 57 Ill. 287; *Sherlock* v. *Winnetka,* 59 id. 389; *Jacksonville* v. *Railway Co.* 67 id. 540; *Quincy* v. *Jones,* 76 id. 231; *Kreigh* v. *Chicago,* 86 id. 410; *Morrison* v. *Hickson,* 87 id. 587; *Lee* v. *Mound Station,* 118 id. 312; *Smith* v. *McDowell,* 148 id. 51; *Chicago* v. *Collins,* 175 id. 457.

Since the use of the streets is not a privilege, the tax must be a tax on the vehicle as property. As it is already taxed *ad valorem,* this would be double taxation, lacking uniformity and equality. *Chicago* v. *Collins,* 175 id. 445.

Complainant is already licensed, and pays a tax upon its occupation (that of a drayman or expressman) of $2.50 per annum for each single-horse wagon and $5 for each two-horse wagon. Mun. Code of Chicago.

Taxing a drayman's occupation twice by way of license when other similar occupations are subjected to one license fee only, is unreasonable and oppressive. *Memphis* v. *Express Co.* 102 Tenn. 343; *Walker* v. *New Orleans,* 31 La. Ann. 828; *Williams* v. *Garigurs,* 30 id. 1094.

The statute limiting the scope of tax to vehicles "conveying loads" thereby exempts vehicles carrying a driver, only. *Thwing* v. *Insurance Co.* 103 Mass. 406; *Howe* v. *Castleton,* 25 Vt. 167.

The words "conveying loads" fairly limit the scope of the tax to vehicles operated for commercial purposes. The ordinance must be construed most strongly in favor of the public. Cooley on Taxation, (2d ed.) 276; *Davis* v. *Petrinovich,* 112 Ala. 654; Cooley on Const. Law, 586.

A tax on family vehicles would be invalid. *Livingston* v. *Paducah,* 80 Ky. 656; *Johnston* v. *Macon,* 62 Ga. 651.

The statute by its terms limits its application to municipalities having a city form of government and has no application to vehicles on the streets of villages. There being no difference in situation or circumstances between municipalities having these different forms of government, each having streets to maintain, such classification is arbitrary and unconstitutional. *People* v. *Martin,* 178 Ill. 611; *People* v. *Knopf,* 183 id. 414; *Horwich* v. *Laboratory Co.* 205 id. 497; *Strong* v. *Dignan,* 207 id. 390; *L'Hote* v. *Milford,* 212 id. 418; *Manowsky* v. *Stephan,* 233 id. 409.

The statute authorizes the levying of a tax for corporate purposes, and is a revenue measure pure and simple. It has none of the elements of a regulatory measure and the tax to be collected is in no sense a license. It is governed, therefore, by the second half of section 9 of article 4 of the constitution of 1870,—not by section 1 thereof. Since the tax

is not one for local improvements but for "other corporate purposes," it must be uniform in respect to persons and property,—all, not each class,—within the jurisdiction of the body imposing same. In this respect a tax differs from a license, which latter is governed by the second half of section 1 and need be uniform only as to class: Const. of 1870, art. 9, secs. 1, 9; *Crane* v. *Park Comrs.* 153 Ill. 348.

EDWARD J. BRUNDAGE, Corporation Counsel, EMIL WETTEN, EDWIN H. CASSELS, and CLARENCE N. BOORD, for appellee:

In Illinois a license may be imposed for the purpose of raising revenue. *Ferry Co.* v. *East St. Louis*, 102 Ill. 560; *Banta* v. *Chicago*, 172 id. 204; *Howland* v. *Chicago*, 108 id. 496; *Distilling Co.* v. *Chicago*, 112 id. 19; *Carrollton* v. *Bazzette*, 159 id. 284; *Price* v. *People*, 193 id. 114; *Bessette* v. *People*, 193 id. 334; Cooley on Taxation, (3d ed.) 1133, *et seq.; Fleetwood* v. *Read*, 21 Wash. 547.

Clause 96 of section 1, article 5, of the City and Village act is constitutional. It is a valid exercise of the taxing power lodged in the State.

The privilege of using the public streets is a proper subject for taxation. The power of taxation is unlimited, except by express constitutional limitation. Cooley on Taxation, (3d ed.) 9; Cooley's Const. Lim. (7th ed.) 678; *Porter* v. *Railroad Co.* 76 Ill. 561; *Eurigh* v. *People*, 79 id. 214; *Greenleaf* v. *Board of Review*, 184 id. 226.

The legislature has plenary power over the public streets of the city, and the right of the public to use the streets is subject to legislative control. Elliott on Roads and Streets, (2d ed.) secs. 22, 421; Dillon on Mun. Corp. (4th ed.) sec. 656; *People* v. *Walsh*, 96 Ill. 232; *Smith* v. *McDowell*, 148 id. 51; *Lumber Co.* v. *Cicero*, 176 id. 9; *St. Louis* v. *Green*, 7 Mo. App. 468; *Fort Smith* v. *Scruggs*, 70 Ark. 549; *Terre Haute* v. *Kersey*, 159 Ind. 300.

The constitution of Illinois is a limitation on the power of the legislature,—not a grant of power. Cooley's Const. Lim. (7th ed.) 126; *Thorpe* v. *Railroad Co.* 27 Vt. 532; *Sawyer* v. *Alton,* 3 Scam. 127; *Mason* v. *Waite,* 4 Scam. 127; *Harris* v. *Supervisors,* 105 Ill. 445; *Wilson* v. *Trustees,* 133 id. 443; *People* v. *Thompson,* 155 id. 451; *People* v. *Kirk,* 162 id. 138; *Chicago* v. *Cement Co.* 178 id. 372.

The license authorized by clause 96 of section 1, article 5, of the City and Village act, and imposed by the ordinance, is not a property tax. It is a license tax, and as such is subject only to the constitutional requirement that it shall be uniform as to the class upon which it operates. It is not double taxation of property, since it does not authorize taxation of property. The statute merely authorizes the taxation of the right or privilege of using the public streets,—a privilege which was not taxed prior to the enactment of the statute. *Gartside* v. *East St. Louis,* 43 Ill. 47; *Ferry Co.* v. *East St. Louis,* 102 id. 560; *Marmet* v. *State,* 45 Ohio St. 63; *Fort Smith* v. *Scruggs,* 70 Ark. 549; *Terre Haute* v. *Kersey,* 159 Ind. 300; *Kersey* v. *Terre Haute,* 161 id. 471; *Tomlinson* v. *Indianapolis,* 144 id. 422; *St. Louis* v. *Green,* 70 Mo. 562; *St. Louis* v. *Weitzel,* 130 id. 600; *Frommer* v. *Richmond,* 31 Gratt. 646; *Kansas City* v. *Richardson,* 90 Mo. App. 450; *Johnson* v. *Asbury Park,* 58 N. J. L. 604; *Mason* v. *Mayor,* 92 Md. 451.

An occupation tax and a tax on the privilege of using vehicles on the streets do not constitute double taxation, even though the vehicles are used in the pursuit of the occupation. *St. Louis* v. *Weitzel,* 130 Mo. 601; *Kansas City* v. *Richardson,* 90 Mo. App. 450; *Frommer* v. *Richmond,* 31 Gratt. 646.

Clause 96 of section 1, article 5, of the City and Village act applies to villages as well as cities, and hence there is no arbitrary classification of municipalities. 1 Starr & Cur. Stat. 790, 791; Lewis' Sutherland on Statutory Const. (2d ed.) par. 351.

235—5

Mr. JUSTICE HAND delivered the opinion of the court:

The bill in this case was filed by the complainant to test the constitutionality of the "wheel tax" ordinance passed by the city of Chicago and the statute under which said ordinance was passed.

It is first contended that the legislature is without power to authorize the city of Chicago to pass an ordinance requiring vehicles using its streets to pay a license fee, which fee, when collected, shall be kept as a separate fund and used for improving and keeping in repair the streets and alleys of the city, as it is said, first, the license fee thus provided for is a tax; and second, the privilege of using the streets of the city with wagons and vehicles cannot be taxed. We think it clear in this State that a license may be imposed and the fee for such license collected with a view to revenue only, and if such be the law, the fact that the license required to be paid by said ordinance in this case is for revenue only, does not render the statute under which the ordinance was passed, and the ordinance, unconstitutional.

In *Wiggins Ferry Co.* v. *City of East St. Louis,* 102 Ill. 560, a suit was brought to recover a license fee imposed upon the Wiggins Ferry Company, and the court, on page 567, said: "The constitution has not prohibited the General Assembly from imposing or authorizing the imposition of the duty to procure a license to pursue any calling, nor has it limited the power or limited its exercise. In this respect the power of the legislature is the same as it has ever been since the organization of the State government, and no one, we presume, will question the legislative power to require persons engaged in various avocations to procure a license for the purpose, and thus regulate the exercise of an avocation. It is a power exercised by all governments, and is one of the essential means of providing for raising revenue for both the State and local governments and the

regulation of business.  If the constitutional convention had intended to make so·radical a change as to deprive the legislature of this power, or to make a license fee uniform throughout the State on all persons exercising the same calling, without regard to the capital invested, business done or profits realized, that body would have employed very different language from that which we find in that instrument.  They were aware that this court had held that a license fee was not a tax, in the constitutional sense, and we have a right to suppose they used the term 'tax' in a sense to exclude a license.  That body could not have intended to deprive municipal bodies of this great source of revenue, and to abandon the power, either directly or through municipal bodies, to regulate various callings.  If they had intended to prevent all licenses for all purposes they would have said it, or if it was intended to restrain the exercise of the power to regulate them it would have been so provided."

In *Banta* v. *City of Chicago,* 172 Ill. 204, in which case an ordinance requiring brokers to be licensed was held to be valid, the court, on page 219, said:  "The occupation may be lawful in itself and not subject to prohibition or regulation by the State, yet it may be prohibited in order to compel the taking out of·a license if the purpose is to raise revenue·by. means of license fees.  *  *  *  In the view we take of the case it is not material to determine whether the license fee is for revenue or for purposes of regulation.  We think it is well settled by repeated decisions of this court that the State in its sovereign capacity, and the cities and villages of the State by virtue of the grant of the power by the General Assembly, have ample power and authority to impose license fees upon the occupation of a broker  *  *  *  for the purposes either of regulation or revenue."

In *Price* v. *People,* 193 Ill. 114, the court said (p. 117) :  "It is a well recognized attribute of sovereign power to tax

any occupation for the purpose of raising revenue, and such tax may be laid and collected in the form of a license fee."

In *Bessette* v. *People,* 193 Ill. 334, on page 342, the court said: "We are not prepared to say that the legislature has not the power to impose an exaction in the form of a license fee for revenue upon the business of horse-shoeing, even though the exaction of such license fee is not a tax."

We think, therefore, the contention that the statute and ordinance are void by reason of the fact that a license fee is exacted for wagons and other vehicles using the streets of the city, which is to be set aside as a special fund to be used in improving and repairing the streets of the city, does not render said statute and ordinance unconstitutional and void.

In disposing of the second contention of the appellant it must be borne in mind that the constitution of this State is a limitation upon and not a grant of power to the legislature, and that the legislature has the right to exercise any power not prohibited by the State or Federal constitution. In the *Price case,* on page 116, it was said: "Section 1 of article 4 of the constitution of 1870 lodges the legislative power of the State in the General Assembly, consisting of the senate and house of representatives. The supreme or sovereign power of legislation, which under our form of government resides in the people, by the adoption of said section 1 of article 4 of the constitution of 1870 was vested in the General Assembly, subject only to the limitations and restrictions found in other portions of the organic instrument or in the constitution of the United States."

In *Thorpe* v. *Rutland, etc. Railroad Co.* 27 Vt. 532, at page 543, Mr. Justice Redfield said: "It has never been questioned, so far as I know, that the American legislatures have the same unlimited power in regard to legislation which resides in the British parliament, except where they are restrained by written constitutions. That must be

conceded, I think, to be a fundamental principle in the political organizations of the American States. We cannot well comprehend how, upon principle, it should be otherwise. The people must, of course, possess all legislative power originally. They have committed this in the most general and unlimited manner to the several State legislatures, saving only such restrictions as are imposed by the constitution of the United States or of the particular State in question."

In the case of *Sawyer* v. *City of Alton*, 3 Scam. 127, at page 130, the court, in discussing the constitutionality of a provision of the charter of the city of Alton authorizing the collection of a poll-tax, said: "The plaintiff in error denies the power of the legislature to impose any tax unless property is the basis and the mode of levying it is by valuation. There can be no doubt that when property is to be taxed, the mode of levying the tax must be by valuation. But does the constitution limit the power of the legislature as to the objects of taxation or only prescribe the mode, when the tax is to be imposed on a particular object? The constitution of the State is not to be regarded as a grant of power, but rather as a restriction upon the powers of the legislature, and it is competent for the legislature to exercise all powers not forbidden by the constitution of the State nor delegated to the general government nor prohibited to the State by the constitution of the United States. The legislature, then, possesses the general power of taxation as to other objects unless restricted by this section of the constitution. We are of opinion the framers of the constitution intended to direct a uniform mode of taxation on property and not to prohibit any other species of taxation, but to leave the legislature the power to impose such other taxes as would be consonant to public justice and as the circumstances of the county might require."

In *Mason* v. *Wait*, 4 Scam. 127, at page 134, the court said: "A different rule obtains in interpreting the powers

in the constitutions of the United States and the States. In ascertaining the powers of the former we examine to see what powers are expressly granted or are necessarily implied for their exercise; in the latter we only examine to see what are denied by the Federal and State constitutions. And my view of the law-making power of these State governments is, that they can do any legislative act not prohibited by the constitutions, and without and beyond these limitations and restrictions they are as absolute, omnipotent and uncontrollable as parliament."

In *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372, at page 380, it was said: "It is not and cannot be denied that the legislature of this State has full power to enact all laws pertaining to the civil government of the State not prohibited by the Federal or State constitution. The constitution itself confers that power, and as said in *Firemen's Benevolent Ass.* v. *Lounsbury*, 21 Ill. 511, (speaking of the constitution of 1848, similar in that regard to our present constitution): 'The general grant of legislative power found in the constitution confers upon the General Assembly all legislative power and authorizes the law-makers to pass any laws and do any acts which are embraced in the broad and general word 'legislation,' as known and defined in the English language.' "

The power, therefore, of the legislature to raise revenue being unlimited, it clearly extends to the power to grant to the municipalities of the State the right to exact a license fee from all persons, firms or corporations using wagons or vehicles upon their streets, in the form of a license fee, unless prohibited by constitutional enactment.

Mr. Cooley, in his work on Taxation, (2d ed. p. 5,) says: "Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession, franchise or privilege, or occupation or right. Nothing but express constitutional limitation upon legislative authority can exclude anything to which

the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue purposes. And not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried to any extent which the government may find expedient. It may therefore be employed again and again upon the same subjects, even to the extent of exhaustion and destruction, and may thus become, in its exercise, a power to destroy. If the power be threatened with abuse, security must be found in the responsibility of the legislature which imposes the tax to the constituency who are to pay it. The judiciary can afford no redress against oppressive taxation so long as the legislature, in imposing it, shall keep within the limits of legislative authority and violate no express provision of the constitution. The necessity for imposing it addresses itself to the legislative discretion, and it is or may be an urgent necessity which will admit of no property or other conflicting right in the citizen while it remains unsatisfied." And again, in his work on Constitutional Limitations, (2d ed. p. 479,) the same author says: "The power to impose taxes is one so unlimited in force and so searching in extent that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it. It reaches to every trade or occupation; to every object of industry, use or enjoyment; to every species of possession; and it imposes a burden which, in case of failure to discharge it, may be followed by seizure and sale or confiscation of property. No attribute of sovereignty is more pervading, and at no point does the power of the government affect more constantly and intimately all the relations of life than through the exactions made under it."

This court, in *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561, at page 573, in upholding the constitutionality of the law of 1872 providing for

the taxing of railroad corporations, said: "That the right
to tax rests upon necessity is inherent in every government,
and with us is vested in the legislative department, which
possesses plenary power over the subject, except so far as
it may be restricted by the constitution of the State or of
the United States, and that it rests with those who allege
the unconstitutionality of an act of the legislature to show,
clearly and palpably, wherein it violates the constitution, are
fundamental principles that cannot be controverted." And
in *Eurigh* v. *People,* 79 Ill. 214, at page 216, in upholding
certain sections of the Revenue act relating to the time of
returning the assessment rolls, the court said: "The tax-
ing power of a State is absolute and uncontrolled, except
so far as it is limited by constitutional provisions. Within
such limitations the General Assembly are the sole judges
of the manner in which taxes shall be imposed and collected,
and our constitution contains no limitation on the question
under consideration." And in *Greenleaf* v. *Board of Re-
view,* 184 Ill. 226, at page 227, in upholding the Revenue
act relating to the taxation of the stock of a foreign cor-
poration, the court said: "The General Assembly, repre-
senting the sovereignty of the State, has ample inherent
power to impose taxes on all property within the State, the
only limitations being such as are declared in the consti-
tution of the State or that of the United States."

The doctrine of this court then being that the legislature
has plenary power as to the subjects and objects from which
it will exact revenue, except in so far as it is limited by
constitutional enactment, if we turn to the constitution can
any limitation be pointed out which in any way inhibits the
legislature from authorizing the municipalities of the State
to exact revenue in the form of a license from persons, firms
and corporations using their streets with wagons or vehicles?
Those limitations are found in sections 1 and 2 of article 9
of the constitution, which read as follows:

"Sec. 1. The General Assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the General Assembly shall direct, and not otherwise; but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct by general law, uniform as to the class upon which it operates.

·"Sec. 2. The specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution."

It will be observed that section 1 of article 9 of the constitution expressly authorizes the taxation of "persons or corporations owning or using franchises and privileges," and section 2 provides that the General Assembly is not deprived of power to tax other objects or subjects of taxation than those enumerated in section 1. If, therefore, the right to use the public streets is a "privilege," as used in section 1 of the constitution, the express right is given to the legislature to enact a statute providing that the municipalities of the State may exact a license fee from persons using the streets; if such right is not a privilege, within the meaning of said section 1, then such right of taxation falls within the designation, "other subjects or objects to be taxed," mentioned in section 2 of said article 9. In any event, there is no limitation found in said article 9 upon the power of the legislature to provide by statute that the

municipalities of the State may exact a license fee for the purposes of revenue from the use of the streets of said municipalities, except it shall be "by general law, uniform as to the class upon which it operates."

In *Howland* v. *City of Chicago,* 108 Ill. 496, it was urged that an ordinance imposing a license fee upon persons keeping carriages, etc., for hire was in contravention of the constitution. The court, on page 500, said: "The constitution of 1818 contained, as a limitation upon the taxing power, the following: 'That the mode of levying a tax shall be by valuation, so that every person shall pay a tax in proportion to the value of the property he or she has in his or her possession.' In the constitution of 1848 this restriction was removed, and in its stead it was provided: 'The General Assembly shall provide for levying a tax by valuation, etc., but the General Assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, toll bridges and ferries, and persons using and exercising franchises and privileges, in such manner as they shall from time to time direct.' In our present constitution the provision of the constitution of 1848 is retained, being modified by additions to the subjects of taxation without valuation, and by requiring such taxation to be imposed 'by general law, uniform as to the class upon which it operates.' And to this is added the further provision, that 'the specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution.' It is plain, therefore, that the General Assembly might, under this constitution, impose a tax by general law upon that class of livery-stable keepers who keep carriages for hire, although that business is not enumerated as one of the objects or subjects of taxation without valuation."

In *Price* v. *People, supra,* in construing section 1 of article 9 of the constitution, on page 117, it was said: "Article 9 of the constitution of 1870 is expressly devoted to the exercise of the power of raising revenues. Section 1 of the said article authorized the General Assembly to tax certain occupations specifically enumerated in the section. The occupation of private employment agent is not therein enumerated. The incorporation into the constitution of the section giving the legislature authority to tax certain enumerated occupations for the purpose of raising revenue does not operate to limit the power of the law-making department of the State, in exercising the sovereign right of taxation of occupations, to the particular occupations specified. The familiar canon of construction, that such enumeration should be held by implication to inhibit the taxation of any occupation not specified in the section, can not be given application, for the reason such construction is expressly forbidden by section 2 of article 9 of the organic law. Expressions in *Banta* v. *City of Chicago, supra,* that such canon of construction is applicable, were made inadvertently. No inhibition, therefore, arises against the imposition of a license fee upon the occupation of the plaintiff in error on the sole ground the fee was laid as a tax for purposes of revenue."

In *Bessette* v. *People, supra,* on page 341: "It is true that 'horse-shoers' are not mentioned in said section 1 of article 9 of the constitution, nor can they be included in any of the occupations therein named, but section 2 of said article 9 provides that 'the specification of the objects and subjects of taxation shall not deprive the General Assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution.' * * * Under the power granted by section 2 of article 9 a law might be passed by the legislature requiring the occupation of horse-shoeing to be taxed in the manner therein stated."

In *Raymond* v. *Hartford Fire Ins. Co.* 196 Ill. 329, the validity of the statute placing a two per cent tax on the gross premium received by foreign insurance companies was before the court. The appellants contended that the statute was in violation of section 1 of article 9 of the constitution in holding that this section was not violated by the statute. The court, on page 336, said: "The contention that the statute violates the first section above set out is, that the second clause of that section does not relate to property taxes strictly so called, but to taxes which the legislature may authorize to be levied on different kinds of business or occupations, and that such taxes were intended by the framers of the constitution to be in addition to, and not in lieu of, the tax on property by valuation provided for in the first clause, and that although the legislature has the power to impose the tax authorized by the act of 1899 on foreign insurance corporations as a class, for the privilege of doing business in this State, it has no power to relieve them of their personal property tax imposed by the general Revenue law, enacted under the first clause. There is no substantial difference between this section of the present constitution and section 2 of article 9 of the constitution of 1848, and this court has held that said second clause is not confined to occupations but applies also to property interests, which may be included in the method of taxation adopted by the legislature, and which method may be different from that prescribed by the first clause of said section 1. (*Illinois Central Railroad Co.* v. *McLean County,* 17 Ill. 291; *Sterling Gas Co.* v. *Higby,* 134 id. 557; *Coal Run Coal Co.* v. *Finlen,* 124 id. 666; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561.) While the legislature may, under the second clause of section 1 and under the second section, adopt a different manner of taxing the subjects or objects of taxation therein provided for, it is a constitutional requirement that it shall be done by general law and so as to be uniform as to the class upon which it operates.

The fundamental principles of the constitution governing the exercise by the legislature of the power of taxation appear to be uniformity and equality in the distribution of the burdens of taxation, without taking from the law-making power the discretion to classify and tax occupations, franchises, privileges and business and property interests of certain kinds in a different manner from the manner prescribed for the taxation of property generally, but still requiring the rule of uniformity to be observed as to the class taxed,—that is, as to the constituents of each such class."

It has repeatedly been held that the control of the public streets is vested in the legislature, and that such power of control may be delegated by the legislature to the municipalities of the State. Dillon, in his work on Municipal Corporations, (4th ed. sec. 656,) says: "The legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject * * * to the property rights and easements of the abutting owner, full and paramount authority over all public ways and public places."

In *People* v. *Walsh*, 96 Ill. 232, the act of the legislature authorizing the South Park Commissioners to assume control of certain streets was called in question, and it was urged that the legislature could not transfer the control of the streets from one municipality to another. The court, in discussing that subject, on page 250, said: "The legislature represents the public. So far as concerns the public, it may authorize one use to-day and another and different use to-morrow. If the new use affects private rights, proceedings for condemnation may have to be invoked; but so far as it affects the public alone, its representative, in the absence of constitutional restraint, may do as it pleases."

In *Smith* v. *McDowell*, 148 Ill. 51, in discussing the powers of municipalities over streets and alleys, the court, at page 62, said: "These municipal corporations are instrumentalities of the State, exercising such powers as are con-

ferred upon them in the government of the municipality. Their power is measured by the legislative grant, and they can exercise such powers, only, as are expressly granted or are necessarily implied from the powers expressly conferred. The legislature, representing the great body of the people of the State, when no private right is invaded or trust violated, (*City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540,) may repeal the law creating them, or exercise such control in respect of the streets, alleys and public grounds within the municipalities of the State as it shall deem for the interest of the people of the State."

In *Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9, the constitutionality of an act of the legislature which empowered municipal corporations to set aside streets for pleasure drives was questioned. The court, at page 22, said: "While it is true that the public highways are for the use of the general public, it is at the same time true that the legislature is a representative of the public at large. As such representative it may grant the use or supervision and control over the highways to a municipal corporation, so long as the highways are not diverted to some use substantially different from that for which they were originally intended. There is no special restriction in the constitution of this State upon the power of the legislature in this regard. A city or incorporated town not only bears a property or private relation to the State, but it also bears a political relation thereto. In its political relation it is merely an agency of the State. The municipal corporations of the State are the mere creatures of the State and exist by the authority of the legislature and subject to its control. Hence, when a city or incorporated town holds a street for the benefit of the public it holds it for the benefit of that entire public, of which the legislature is the representative. As the municipality is a mere agent of the State, the legislature can direct the manner in which it shall control the streets within its limits."

In *City of St. Louis* v. *Green,* 7 Mo: App. 468, on page
475, the court said: "That the streets of the city are high-
ways of the State, and therefore public roads, which every
citizen has a right to use, is a valid argument against stop-
ping or unreasonable hindering of travel over the streets,
but it is no argument at all against subjecting travel over
those streets to rules and regulations; and it is surely no
argument against a regulation which the corporation has
imposed by express permission of, and in virtue of a special
grant of power from, the legislature." And again, at page
477: "The argument that the provisions of the charter au·
thorizing a·license tax on private vehicles is void, as being
a violation of the natural rights of the citizen, even if well
founded, would be of no avail.   A court cannot declare
a statutory provision unconstitutional and void because it
may regard it as oppressive and unjust, unless it can be
shown that the supposed injustice is prohibited or the vio-
lated right protected by the constitution.   (Cooley's Const.
Lim. 164.)   The courts cannot declare statutes void because
of their impolicy."

In *Ft. Smith* v. *Scruggs,* 70 Ark. 549, (58 L. R. A.
921,) the court said: "The next question presented is
whether the legislature has the power to authorize cities to
impose a tax upon the privilege of driving vehicles upon the
public streets.   The contention on this point is, that a resi-
dent of a city has a right to drive upon the public streets,
and that the right to do so is not a privilege that can be
taxed.   It is no doubt true that the city could not impose a
tax upon the privilege of using the streets for driving ve-
hicles upon them without legislative permission to do so.
The right to drive on the public streets could not be treated
as a privilege but for the act of the legislature making it
one.   But the streets belong to the public and are under the
control of the legislature.   (Elliott on Roads and Streets,—
2d ed.—sec. 21.)   It is within the power of the legislature
not only to make needful regulations concerning the use of

the public roads and streets, but also to provide means by which they may be improved and kept in repair. In order to effect that purpose the legislature has, in effect, declared the use of the streets by wheeled vehicles to be a privilege and has authorized the city to tax the privilege. We know of no limitation on the power of the legislature that prevents it from passing such an act and thus authorizing the imposition of a reasonable tax for that purpose."

In *City of Terre Haute* v. *Kersey*, 159 Ind. 300, (64 N. E. Rep. 469,) in upholding the validity of an ordinance which was essentially like the ordinance in the case at bar, the court, on page 311, said: "That the power of the legislature in matters of taxation for public purposes is unlimited, except so far as restrained by State or Federal constitution, is well settled. (*Lowe* v. *Board,* 156 Ind. 163, (59 N. E. Rep. 466,) and cases there cited.) That the State possesses plenary powers over public highways and streets is a proposition also well settled. While it is true that a public street of a city or town is a public highway, open alike to travel thereon of every citizen, still this in nowise prevents the State, through the agency of its municipalities, from subjecting the right to use the street to reasonable conditions or restrictions. As cities in this State, under the law, are required to keep their streets in repair, the legislature, in the exercise of its discretion, appears to have deemed it proper to authorize common councils thereof, if they so desired, to exact that those who used them with wagons, carriages and other vehicles should contribute to such repairs by the payment of a reasonable amount on account of such use."

It is, however, said, that section 9 of article 9 of the constitution contains further limitations upon the power of the legislature to authorize the municipalities of the State to exact a license for the use of their streets. That provision of the constitution has been held to apply to the taxation of property alone, and not to the taxation of such

intangible rights as the use of public streets.    In *Banta* v.
*City of Chicago, supra,* on page 221, it was said: "Counsel
insist that the provisions of section 9 of article 9 of the con-
stitution of 1870 are equally applicable to the power of the
city to exact the payment of license fees, and that the re-
quirement of the said latter section that municipal taxes
shall be so laid that they shall be uniform in respect to both
persons and property must be complied with in an ordinance.
enacted for the purpose of raising revenue through the me-
dium of license fees.    The ordinance under consideration
levies a license fee upon each person pursuing the occu-
pation of a broker, and requires that all such persons shall
pay a uniform fee, without regard to the amount or value
of the business transacted by the said brokers, or the capital
they have, if any, invested in the business.    The argument
therefore is, the ordinance is not uniform in respect to
persons and property, and for that reason is in contraven-
tion of said latter section of the constitution.    We think
said section 9 has reference only to taxes to be collected by
assessments upon assessable property.    Such was the view
expressed by this court in *Walker* v. *City of Springfield,*
94 Ill. 364.    When revenue is sought to be raised by the im-
position of license fees, the authority exercised is that given.
by the provisions of section 1 of article 9 of the constitution
of 1870, and it is only necessary, in order to comply with
the provisions of that section, that the ordinance shall be
'uniform as to the class upon which it operates.'    The ordi-
nance under consideration excuses no one of the class upon
which it operates from the payment of the license fee, but
exacts a uniform fee from each person in said class.    It is
uniform in respect to the persons affected, and more is not
required by the constitution."

It is therefore apparent that the only constitutional lim-
itation controlling in any way the right of the legislature to
confer upon municipalities in the State the right to exact
a license fee for the use of their streets is, that the same

must be by "general law, uniform as to the class upon which it operates," and that therefore the statute and the ordinance drawn in question are not unconstitutional and void by reason of the fact, alone, that the legislature has not power to confer upon the municipalities of the State the right to exact a license fee for the use of their streets. The question here raised does not seem to be a new question in this State. In *Gartside* v. *City of East St. Louis,* 43 Ill. 47, a bill in chancery was filed by Gartside, who was using wagons for transporting coal upon the public streets of East St. Louis, to enjoin the city of East St. Louis from enforcing against him an ordinance which required a license fee to be paid to the city for the use of its streets by wagons and other vehicles. The charter of East St. Louis authorized the passage of such an ordinance and the city had passed the ordinance. A demurrer was filed to the bill and sustained, and the bill was dismissed for want of equity. This decree was affirmed by this court. The court said (p. 52) : "In this case appellant, like the owner of a team passing over a toll bridge or ferry, must submit to a reasonable exaction. So of a turnpike or a plankroad. In this case, as in those, the corporation is required to keep the streets in repair, and it is but reasonable and just that persons using them shall contribute, to a reasonable extent, to the expense and outlay for that purpose."

This court has also passed upon the question inferentially in the case of *Wiggins Ferry Co.* v. *City of East St. Louis, supra.* The facts in that case were, that the city of East St. Louis, by its charter, was granted the power "to regulate, tax and license ferries." Under the power granted by the charter the city passed an ordinance fixing a license fee at $100 per annum for each boat. It was held that the provisions of the Illinois constitution in reference to taxation of property had no application to fees exacted for a license, and that, not being a tax upon property but being a tax upon a privilege, it was not double taxation.

The court also held that the ordinance did not violate the rule of uniformity, because it applied to all ferries and ferry boats of the city alike, and made no discrimination.

In *Marmet* v. *State,* 45 Ohio St. 63, an act of the legislature of the State of Ohio imposing a license on each vehicle used on the streets of cities of the first class was sustained. The court said: "It is further urged that the sections quoted are in conflict with section 2 of article 12 of the constitution, which provides that 'laws shall be passed taxing, by a uniform rule, all moneys, etc., according to its true value,' and is an attempt, under form of license, to raise money for general revenue. Section 29, if regarded as imposing a tax, does not purport to tax property; neither does it. An owner may use upon his own premises, and he may manufacture and may sell, any number of vehicles without coming within the provisions of this section. Only when he desires to use such vehicles upon the streets must he pay the annual license fee." And again: "Nor is this exercise of power as to vehicles, generally, an unreasonable exercise of it. The ownership of the streets is in the city, and the duty is imposed to keep them open, in repair and free from nuisance. This involves, in many ways, the expenditure of large amounts of money. * * * Expense of early renewal of the pavement is to be avoided only by careful and constant repairs, made necessary by constant use on the part of those who run vehicles upon the streets, and the better the pavement and the more carefully it is kept in repair the more useful and convenient it becomes for those who so use it. They thus receive a special, direct benefit by the original outlay and by the repairs from time to time, and by such use impose burdens upon the property owners and the public at large. A proportion of them—those who own taxable property—contribute in taxes towards the repair fund, (and may be among those whose property is subject to assessment for the original improvement,) but many do not, and thousands of property owners

use no vehicle of any kind. Why should not these favored ones pay a small sum towards making good that which they wear out?" To the same effect are *Ft. Smith* v. *Scruggs, supra, City of Terre Haute* v. *Kersey, supra,* and *City of St. Louis* v. *Green, supra.*

The appellant relies with great confidence upon the case of *City of Chicago* v. *Collins,* 175 Ill. 445, as establishing the principle that the use of the public streets is not a privilege which is subject to taxation, and that the tax imposed by the ordinance in the case at bar imposed a double tax, and is also violative of the principles of equality and uniformity required by the constitution. The only questions before the court for decision in that case are stated in the first paragraph of the opinion, as follows: "Two questions are presented by this record: Has a court of equity jurisdiction to enjoin the enforcement of an ordinance of a city? and has the city, under the express or implied powers conferred on it by the legislature, authority to adopt this ordinance?" The first of these questions is not involved in this case. It was contended by the city that it had the implied power to impose a license tax under the power expressly conferred by the legislature to regulate the use of the streets. The contention of the appellee was that the tax could not be imposed as a license tax because it was not authorized by the statute, and that the ordinance therefore imposed a tax on property which was invalid because it was not uniform, and constituted double taxation. The court, at page 447, said: "It is contended that the ordinance is void because the city has no power to require a license for private vehicles used on the streets of the city nor to impose a tax by way of license; that a tax so imposed on vehicles, on account of their different values, would not be uniform." The court held that the city had no authority from the legislature, either express or implied, to impose a license tax for the use of the public streets, and that the ordinance, therefore, was invalid as an exercise of the power to levy

a license tax. The court also said that the use of the public streets is a right and not a privilege, and therefore not a subject of license. But at the time of the passage of the ordinance then under consideration the city had no authority to impose a license tax upon the use of the streets,—that is, the right to use the streets had not been made a subject of license taxation by act of the legislature, which has the paramount authority and control of the streets and also the supreme and absolute power in matters of taxation. Prior to the passage of clause 96 of the City and Village act the use of the streets was a common right, which was free and open to all without charge and without toll, and upon this right the city had no power to impose a license tax; but by the enactment of clause 96 the use of the public streets, which before its enactment was a common right, became, by virtue of the legislative act, a privilege, and subject to a license tax at the discretion of the legislative body of the city. What was said by the court in the *Collins case* must be construed in accordance with the statutes then in force. When a statute substantially like the statute under consideration in the case at bar came before this court in the *Gartside case,* the court held that the right or privilege of using vehicles on the streets was a proper subject of license taxation. Clearly, therefore, the court, in the *Collins case,* did not mean to say that nothing can be subject to license if it be lawful to do the thing without legal authority. There are a great many things which had been done or enjoyed as a matter of right, and which later, by legislative act, were properly made the subject of license taxation. In Cooley on Taxation, (2d ed. p. 596,) in a paragraph a part of which is quoted in the *Collins case,* the true nature of a license is explained, as follows: "A license is a privilege granted by the State, usually on payment of a valuable consideration, though this is not essential. To constitute a privilege the grant must confer authority to do something which without the grant would be illegal, for if what is to

be done under the license is open to every one without it, the grant would be merely idle and nugatory, conferring no privilege whatever. But the thing to be done may be something lawful in itself and only prohibited for the purposes of the license,—that is to say, prohibited in order to compel the taking out of a license. This is always the case where that which is licensed was not unlawful at the common law."

After holding that the city had no authority from the legislature to impose a license tax upon the use of the streets of the city, and that therefore the ordinance was not a valid exercise of the licensing power, the court, in the *Collins case,* next discussed the question whether the ordinance in that case was a valid exercise of the city's power to levy a property tax. The court having decided that the ordinance did not impose a valid license tax, said that it was an attempt to levy a property tax; that the tax which was thus attempted to be levied was open to the objection that it was double taxation, and also that it violated the principles of equality and uniformity required by section 1 of article 9 of the constitution. The closing paragraph of the opinion is as follows: "The authority to impose a tax or to exact a license must clearly appear and must be strictly construed. If there is a doubt as to the right, it must be resolved adversely to it. In this case there is no express power given the city council to impose this license fee, and no implied power arises which gives the right. It has no power to levy a tax in this manner. In any view of the case the city had no power to adopt this ordinance." The court did not say, nor can it be implied from what was said, that if the city council had been authorized by the legislature, as in the case at bar, to impose a license tax upon the privilege of using vehicles on the public streets the ordinance would have been invalid, either because the right to use the public streets was a common right inherent in the public and open to all, or because such license tax would have been double taxa-

tion and also violative of the principle of equality and uniformity, as required by the constitution. The *Collins case,* therefore, having been decided at a time when there was no statute authorizing the city council to impose a license tax for the use of vehicles upon the public streets is in no way in point as an authority to sustain the contentions of appellant in the case at bar.

Complainant also contends that it has already been assessed for and has paid an *ad valorem* tax upon its wagons, which tax is equal to and commensurate with that assessed upon other personal property in the city of Chicago; that it has also paid a license fee upon its vocation of carter or public teamster, and has been granted a license by the city of Chicago to pursue that occupation under an ordinance enacted by the city council in pursuance of the authority conferred upon it by paragraph 42 of section 1 of article 5, chapter 24, which provides that the city council may license, tax and regulate hackmen, draymen, omnibus drivers, carters, etc., and that the statute and ordinance under consideration in this case are void, invalid and illegal and unconstitutional because they authorize double taxation.

The law is well settled that the owner of vehicles used upon the public streets and highways may be required to pay an *ad valorem* tax upon such vehicles as property and also may be required to pay a tax upon the right or privilege of using such vehicles in his business,—that is, an occupation tax. The subject of the *ad valorem* taxation is property. The subject of the other taxation is a right or privilege,—an entirely distinct and different thing. Because these two things are distinct and different the two taxes do not constitute double taxation. The question which is now to be considered is whether or not, in addition to the *ad valorem* tax on vehicles, as property, and a license tax on the right to pursue an occupation in which vehicles may be used, there may be imposed also a license tax upon the right or privilege of using vehicles upon the public streets

and highways. Precisely the question is, whether or not a license tax upon an occupation in which an owner of vehicles is engaged and in the pursuit of which he uses such vehicles, and a license tax upon the right to use such vehicles upon the public streets and highways, are taxes upon the same thing, and hence double taxation.

No matter what the subject of taxation, some person must pay the tax. When one person pays a tax for the privilege of pursuing his occupation and for the privilege of using vehicles on the public streets, he is paying taxes on distinct and different things, and the fact that he may use vehicles in his occupation can make no difference. For example, two men each carry on a laundry. One uses vehicles, the other does not. Can the man who has the vehicles justly claim exemption from the tax on the privilege of using vehicles on the streets because he has paid his occupation tax? This occupation tax was paid for the privilege of carrying on a laundry, and he may or may not make use of the further privilege of using vehicles on the streets. The taxes which complainant in the case at bar must pay are levied upon three separate and distinct subjects: (1) An *ad valorem* tax on its vehicles, as property; (2) an occupation tax or license on the privilege of carrying on business as a carter or public teamster; and (3) a license tax on the privilege of using its vehicles on the public streets. Taxation upon each of these three different subjects is not double or triple taxation simply because one person may have to pay two or all of the three taxes, since it is not the person who is taxed, but his property and his privileges. One person may avail himself of a half-dozen or more different privileges, for each of which he may be required to pay a tax or license fee.

The precise question here being discussed was before the Supreme Court of Missouri in *City of St. Louis* v. *Weitzel,* 130 Mo. 601. In that case it appeared that the city council of St. Louis had passed an ordinance imposing upon

all persons engaged in the business or occupation of haul-
ing garbage an annual license fee of $20 for each cart or
wagon used in such business.  There was also an ordinance
enacted, under power conferred by the legislature in the
city charter, imposing a license tax upon vehicles for the
general use of the streets.  Weitzel paid his license tax for
the use of his vehicles on the streets, and urged that such
license tax having been already paid by him upon his ve-
hicles, the ordinance imposing an occupation tax of $20 for
each wagon was an attempt to collect a double tax or license
fee.  In holding that the ordinance was valid and that it
did not impose double taxation, the court, at page 619,
said: "But it is said that, the evidence disclosing that a
license tax had already been paid on the wagon, it 'cannot
be taxed twice for the same purpose.'  This is doubtless
correct, but the city is not here attempting to impose a
double tax for the same purpose.  The occupations are en-
tirely different, and the city, under paragraph 5, section 26,
of its charter, has the power 'to license, tax, regulate or
suppress all occupations, professions and trades not here-
tofore enumerated, of whatever name and character.'  This
would, of course, include power to license,—tax the 'busi-
ness of hauling garbage.'  (*St. Louis* v. *Bowler,* 94 Mo.
633.)  Under its charter powers the city may levy these
taxes:  First, a tax on property; second, a vehicle tax
for use of streets; third, a tax on the business or occupa-
tion.—*St. Louis* v. *Green,* 7 Mo. App. 468, 470; *St. Louis*
v. *Sternberg,* 69 Mo. 302."

Another well considered case, precisely in point, is *Kan-
sas City* v. *Richardson,* 90 Mo. App. 450.

In *Frommer* v. *City of Richmond,* 31 Gratt. 646, the
appellant was a butcher, who was duly licensed by the city
council and kept a stall in one of the city markets, for which
he paid rent to the city.  He also paid the *ad valorem* tax
upon his wagons, which were listed by him as a part of his
personal property.  An ordinance was passed by the city

council imposing a license tax upon wagons, drays and carts used by the owners thereof in the city of Richmond. The court held that the ordinance was valid, and on page 650 said: "It is in no sense a double tax. The city does not tax them as property, but simply requires the license for the privilege of using its streets in the conduct of his business in the city."

In the case of *Gartside* v. *City of East St. Louis, supra,* the words of the charter and the ordinance are similar to the statute and ordinance in this case, and the court held both to be valid. In that case the charter gave the common council the power "to direct, license and control all wagons and other vehicles conveying loads within the city and prescribe the width and tire of the same," and the ordinance prohibited persons without a license "from hiring out or keeping for hire or use, or causing to be used for hire in the transportation of persons or property from one part of the city to another, or from places within to places without the city, or from places without to places within the city," any wagon or other vehicle without paying a license fee of $10 for each team, and the ordinance established a schedule of rates in the same manner as does the ordinance at bar. The *Gartside case* is to-day the law of this State, and is conclusive authority, we think, on the proposition that said statute and ordinance are valid enactments, and must control in this case unless it is to be overruled.

It is also urged that clause 96 of section 1 of article 5, chapter 24, is void because it does not apply to villages as well as cities. This is a misapprehension of the law. The first clause of section 1 provides: "The city council in cities, and president and board of trustees in villages, shall have the following powers." Clause 96, hereinbefore set out, is one of the enumerated powers by said section 1 conferred upon the city councils in cities and the president and board of trustees in villages, and therefore applies to villages as well as cities.

Other objections have been urged to the constitutionality of said provision of the statute and said ordinance, but we deem them to be without force.

Finding no error in this record the decree of the circuit court will be affirmed.                    *Decree affirmed.*

Mr. CHIEF JUSTICE CARTWRIGHT, dissenting.