STATE OF NEW JERSEY, JOHN J. CLEARY, PROSECUTOR, DEFENDANT IN CERTIORARI, v. RICHARD H. JOHNSTON, PLAINTIFF IN CERTIORARI.

Argued June Term, 1909—Decided November 18, 1909.

1. The provisions of section 16 of the act (*Pamph. L.* 1908, *p.* 613) which fixes an annual fee of $3 for registering an automobile of less than thirty horse power, and a fee of $5 for each automobile of thirty horse power or more; and which fixes a fee of $1 for a license to the driver of the first, and $2 for a license for the driver of the second class automobiles, are not unconstitutional.

2. These provisions are legitimate exercises of the police power of the state, notwithstanding the clause in the statute that requires all fees, fines and penalties arising under the act to be paid to the treasurer of the state, and to be apportioned by the state road commissioner for the repair of improved roads.

3. If it were necessary to regard these provisions as an intentional legislative imposition of a tax for revenue, they yet would not be unconstitutional.

4. The provision requiring each non-resident owner of an automobile to designate an agent in the state upon whom process may be served in any action against the owner growing out of the operation of his registered machine in this state, is not unconstitutional.

5. The other points raised are covered by the case of *Unwin* v. *State*, 44 *Vroom* 529; affirmed, 46 *Id.* 500.

This writ of *certiorari* brings up a judgment of the Court of Common Pleas of Mercer county, rendered on an appeal from a conviction of the plaintiff in *certiorari*, before a police justice of the city of Trenton upon a complaint that the plaintiff in *certiorari* had violated section 16, subdivision 1, of an act of the legislature of this state entitled "An act defining motor vehicles and providing for the registration of the same and the licensing of the drivers thereof; fixing rules regulating the use and speed of motor vehicles; fixing the amount of license and registration fees; prescribing and regulating process and service thereof, and proceedings for the violation of the provisions of this act and penalties for said violations," approved April 12th, 1906, and the supplements and amendments thereto.

Before Justices REED, BERGEN and VOORHEES.

For the plaintiff in *certiorari, Peter Backes* and *Xenophen P. Huddy* (of the New York bar).

For the defendant in *certiorari, Nelson B. Gaskill,* assistant attorney-general.

The opinion of the court was delivered by

REED, J.   The complaint against Mr. Johnston was that he drove an automobile on the public highways of the city of Trenton in this state, without first having registered the automobile according to law, and without his having paid the registration fee thereon and therefor, pursuant to the statute.

The uncontradicted facts are that Mr. Johnston, on the day charged in the complaint, was a citizen of the State of New York, and the owner of an automobile duly registered in that state, which automobile he had on this day operated from New York city as far as Trenton, on his way to Philadelphia. He was arrested in Trenton.   His automobile was not registered in New Jersey, nor had he a New Jersey license, nor, of course, had he paid the registration and license fees provided for by our statute.

Mr. Johnston was in the service of the White Steamer Company, at the agency of the said company in New York city. At the time of the alleged offence neither he nor his company were engaged as common carriers operating automobiles in and across the State of New Jersey to and from adjoining states.

Mr. Johnston intended to bring about his own arrest for violating the provisions of the automobile statute.

Upon these facts judgment was entered in the Common Pleas on appeal for a penalty of $100.

Section 16 of the amended Automobile act of 1908 (*Pamph. L., p.* 613) requires that every resident and non-resident of this state whose automobile shall be driven, shall, before using such automobile on the public highways, register the same; and that no motor vehicle shall be driven unless so registered.

The unamended section 35 of the act of 1906 (*Pamph. L., p.* 195) provides that any person who shall be convicted of the violation of section 16 shall be subject to a fine not exceeding $100.

It is admitted that Mr. Johnston did violate the provisions of section 16 and so became subject to the penalty imposed. Therefore, if the statute is constitutional, the imposition of the penalty was admittedly regular.

The attack now made is upon the validity of the statute. The objections are leveled at the provisions of section 16; and the grounds of the attack are—*first,* because the section imposes a tax upon automobiles, not according to their true value but according to the horse power of each automobile; *second,* that this is a double tax, the first tax being levied by the assessor of taxes; *third,* that automobiles are put in a special class for the purpose of taxation, from which class are excluded property similar in character; *fourth,* that the imposition is a state tax upon the business of interstate commerce, and so violative of the federal constitution; *fifth,* that such imposition is also a violation of the fourteenth amendment of the federal constitution; and *sixth,* that the act requiring a non-resident to designate an agent upon whom process may be served in this state, discriminates against citizens of other states.

In the case of *Unwin* v. *State,* 44 *Vroom* 529; *affirmed,* 46 *Id.* 500, it was held that the provisions of the Automobile act of 1905 (*Pamph. L., p.* 484), which required every resident and non-resident owner of an automobile to procure a license to drive such automobile, to register the same, and to pay for such license, were constitutional. It was held these registration requirements were within the legitimate exertion of the police power for the purpose of securing the safety of the public in its use of highways against the danger of this new use by powerful, rapidly moving machines which require careful and skillful drivers. The same grounds unsuccessfully taken against that act are now advanced against the present statute.

The counsel for the plaintiff in *certiorari* insists that the

present statute differs from that under which the Unwin case was decided, because of the increase in the amounts imposed for registration fees by the latter act.

Under the act of 1905, *supra,* there was imposed a registration fee of $1. It was the requirement of the payment of this sum for private owners of each automobile, and the payment of $10 by manufacturers and dealers for all machines owned and controlled by them, that was under consideration in the Unwin case.

Section 16 of the act of 1908, which act was in force at the time of the arrest of Mr. Johnston, fixes the fee for registration at $3 for each motor vehicle having a rating of less than thirty horse power, and at $5 for each motor vehicle having a rating of thirty horse power or more. The manufacturer's and dealer's fee is $25 for not more than five automobiles owned and controlled by such manufacturer or dealer at the same time. Beside the fee for registration, there is required a fee of $1 for a license to drive a car of less than thirty horse power, and a fee of $2 for a license to drive a car having a rating of thirty horse power or more.

Section 37 of the act of 1908 provides that the money received in accordance with the provisions of the act, whether from fines, penalties, registration fees, license fees, or otherwise, shall be accounted for and forwarded to the commissioner of motor vehicles, and by him paid over to the treasurer of the State of New Jersey, to be appropriated annually to the commissioner of public roads, and be used as a fund for the repair of improved roads throughout the state, and by him apportioned around each year among the several counties of the state, according to the mileage of improved roads in each county, to be used for the repair of said roads.

Now the ground of differentiation insisted upon by the counsel for the plaintiff in *certiorari* between the former and the present act is that while the former act provides for a one dollar license fee imposed by force of the police power residing in the state, the present fees are imposed as a tax for the purpose of revenue.

Regarding this point it is to be remarked that there is noth-

ing in the record brought up which exhibits the legitimate expenses to which the state is put in its course of registering, regulating and licensing automobiles. The evidence upon which the writ was allowed is not evidential upon this hearing. If it could be resorted to the facts stated do not show that the charges are so unreasonably in excess of the cost of regulating and supervising automobiles as to compel us to say that the charges are not regulative. The state furnishes a central office, official assistance, clerical force and legal advice by the attorney-general's office, for which no separate charges are made, but which, indirectly, are an expense to the state. It does not follow that the amounts paid for certain specific services by certain officers represent all the cost and expense to which the state is subjected. Therefore the fact that the receipts from fees for registration and for licenses largely exceed the sum specifically charged for the maintenance of the automobile department does not prove that the fees are extortionate for regulative purposes.

Nor would the fact that the public treasury is incidentally augmented by the fees paid for automobile registration and licenses have the effect of making such registration and license fee a tax. *Berry, Laws of Automobiles,* § 86, and cases cited.

Nor do the provisions of section 37, already exhibited, demonstrate that the fees imposed are beyond the limits of regulative charges. It does not follow that because all the receipts from the automobile department are paid over to the commissioner of public roads, that the cost to the state for the regulation of automobiles may not approximate the sum so paid. The cost of maintaining the automobile department, as already remarked, is in a degree entangled with the cost of maintaining other departments, and such cost may be paid out of any state fund, while the specific receipts from the automobile department may be paid into the general state fund.

For an instance, the fact that all license fees are paid into the school fund for the amount for which they are assessed, and the cost of the regulation is paid out of a general

revenue raised by tax, is of no consequence in determining the character of the fee. *State, ex rel.,* v. *Hudson,* 78 *Mo.* 302; *State* v. *Hipp,* 38 *Ohio St.* 199, 225.

So it does not appear that the fees fixed are taxes for revenue.

Regarding them as fees for the purpose of regulating, they fall within the rule laid down in the case of *Unwin* v. *State, supra.* But if the imposition is to be regarded as license fees imposed for revenue, it does not follow that the imposition of such fees is beyond the power of the legislature.

The counsel for the plaintiff in *certiorari* cites cases where municipalities have been empowered to license street cars, and among which cases it has been held that municipalities could not impose a license tax for revenue. *State* v. *Hoboken,* 4 *Vroom* 280; *North Hudson Railway Co.* v. *Hoboken,* 12 *Id.* 71; *Muhlenbrinck* v. *Commissioners,* 13 *Id.* 364.

But this line of cases does not establish the inability of the legislature to impose such taxes for revenue, nor its inability to delegate to municipalities the power to impose such taxes.

In each of these cases a municipality had attempted to tax occupations for revenue, and the courts held that the power conferred by the legislature was not a power to tax, but only a power to regulate such occupations under its police power.

In *North Hudson Railway Co.* v. *Hoboken, supra,* the city of Hoboken, by ordinance, attempted to compel the railroad company to take out a license, and pay an annual license fee of $15 for each one-horse car, and $25 for each two-horse car. This ordinance was held to be invalid; but it was so held because the legislature had conferred no power upon the common council to impose a license tax. The ground assigned for holding the ordinance invalid is stated by Mr. Justice Depue thus: "Nor can the authority of a municipal corporation to exercise what in substance is the power of taxation, be deduced from a grant of power to license specifically. A power to license is of the same nature as a power to regulate. Under a charter authorizing the regulation of a business or

occupations, an ordinance compelling persons engaged in such business or occupations to take out licenses may be adopted, if the license is an appropriate method of regulating the prosecution of the business. * * * The exaction of a license fee for revenue purposes is clearly an exercise of the power of taxation, and cannot be sustained unless the charter plainly shows an intent to confer that power. *Cooley Const. Lim.* 201; 1 *Dill. Mun. Corp.,* § 291." ¹

Again, the learned justice observes: "If the power be granted with a view to revenue, the amount of the tax, if not limited by the charter, is left to the judgment and discretion of the municipal authorities."

So, in the case of *Muhlenbrinck* v. *Commissioners, supra,* where a license fee of $3 for each wagon was imposed upon peddlers, it was held it was a tax for revenue, and the ordinance was set aside, because, in the language of Mr. Justice Knapp: "That there is no legislative authority given to the corporation to impose a tax upon this or any other sort of trade, is clearly discoverable upon an examination of its charter provisions; they contain no such grant of power."

In the case of *Cape May* v. *Cape May Transportation Co.,* 35 *Vroom* 80, it was admitted that the act of 1885 (*Pamph. L., p.* 317) authorized the imposition of fees by ordinance for the running of cars for the purpose of revenue.

In *Morgan* v. *Orange,* 21 *Vroom* 389, the validity of the act of 1885, *supra,* empowering municipalities to license *inter alia* owners and drivers of vehicles, and impose fees for revenue, was recognized.

The ability of the legislature to tax occupations, and to delegate to municipalities the power to do so, is exhibited in the line of cases digested in volume 4 of *N. J. Digest, p.* 7978. Nor is the imposition of such taxes inimical to the constitutional provision requiring property to be assessed for taxation by uniform rules according to its true value. *Johnson* v. *Asbury Park,* 29 *Vroom* 604; *affirmed,* 31 *Id.* 427; *Standard Underground Cable Co.* v. *Attorney-General,* 1 *Dick. Ch. Rep.* 270; *State* v. *Corson,* 38 *Vroom* 178

Nor can a non-resident complain of such an imposition, unless he is discriminated against in favor of a resident. *Muhlenbrinck* v. *Commissioners, supra; Morgan* v. *Orange, supra.*

But it is insisted that if the statute imposes a fee for revenue it is in conflict with the federal constitution, in that it is a regulation of interstate commerce. Whether the imposition of a tax upon vehicles running upon the roads of the state by all owners of such vehicles (whether resident or non-resident), the money received from such taxes to be used for the purpose of keeping such highways in a condition of safe and comfortable use, would be a valid exercise of the power of the state legislature in respect to motors used as instruments in carrying on interstate commerce, need not be discussed. It need not be discussed because it cannot be pretended that the plaintiff in *certiorari* was so engaged.

Again it is urged that the provision of section 16 is unconstitutional. This provision is that "each owner having a residence outside of the state shall file with the Secretary of State a duly executed instrument constituting the Secretary of State and his successors in office, the true and lawful attorney upon whom all original process in any action or legal proceeding for damages, caused by the operation of his registered motor vehicle within this state, against such owner may be served, and therein shall agree that any original process against such owner shall be of the same force and effect as if served upon such owner within this state; the service of such summons shall be made by leaving a copy of same in the office of the Secretary of State. * * * Said commissioner of motor vehicles shall forthwith notify such owner of such service by letter directed to him at the post-office address stated in his application."

This provision was probably suggested by a similar provision appertaining to foreign corporations licensed to do business in this state. It is to be remarked, however, that as respects such foreign corporations, their licensing in this state is a mere privilege, and in no sense a right; while on the other hand, the right of a citizen of another state to travel over the high-

ways of this state is more than a privilege, nevertheless, I am of the opinion that the imposed condition upon a non-resident owner of an automobile wishing to use the roads of this state is not an unconstitutional imposition.

Assuming that the right to use the highways belongs to such non-resident owner, yet it is obviously not an absolute right. The stringent legislative restrictions upon the use of the highways by automobiles—which restrictions have received judicial approval—exhibit the fact that the automobile is regarded as a dangerous engine, if used otherwise than under the control provided for by the legislature. It is apparent that these restrictions upon the manner in which highways shall be used by automobiles can only be made effective by penalties; and the penalties can only be enforced by reaching the owners of such machines.

A provision for impounding the machine itself would be valid, but while valid, would be inefficacious, because the speed of the automobile is such that in most instances the machine itself would escape arrest. Resident owners can be reached by service of process within this state, while non-resident owners, of course, unless by voluntary appearance, are immune from service. Thus while legal proceedings to enforce the penalties for violating the automobile law can be taken in the courts of this state as against residents, yet as to non-residents, in the absence of a provision like the one in question, such enforcement would mean numerous suits in other states in the union from New York to California, or perhaps in other continents.

In view of the present need of a vigorous enforcement of these laws for the protection of all other users of the highways, I am of the opinion that the condition imposed that a man who proposes to use our highways for motoring shall agree to submit himself to the courts of the state into which he comes, so far as concerns matters growing out of such use, is neither unconstitutional nor unreasonable.

In respect to the point that this burden is imposed upon non-residents and not upon residents, and so an unconstitutional inequality is created, it is sufficient to say that both residents

and non-residents are placed upon the same footing. Both are made amenable to the laws of the state whose highways they are using.

The other points made in the case have already been determined in the case of *Unwin* v. *State,* 44 *Vroom* 529; *affirmed,* 46 *Id.* 500.