[Crim. No. 1840.  In Bank.—February 24, 1914.]

In the Matter of the Application of ALFRED J. SCHULER, for a Writ of Habeas Corpus.

[Crim. No. 1841.  In Bank.—February 24, 1914.]

In the Matter of the Application of PERCY E. TOWNE, for a Writ of Habeas Corpus.

[Crim. No. 1842.  In Bank.—February 24, 1914.]

In the Matter of the Application of DOUGLAS MITCHELL, for a Writ of Habeas Corpus.

CONSTITUTIONAL LAW—MOTOR VEHICLE ACT—REGISTRATION OF VEHICLES—COLLECTION AND DISPOSITION OF FEES.—The Motor Vehicle Act (Stats. 1913, p. 639) to regulate the use and operation of vehicles upon the public highways, to provide for the registration and identification of motor vehicles, the payment of fees therefor, the licensing of persons operating motor vehicles, etc., will not be held invalid on the ground that by the terms of section 35 thereof one-half of the fees collected by the state treasurer are to be returned to the counties from which received and paid into their road funds; since conceding, though not deciding, that such section is void, the court would be compelled nevertheless to uphold section 7 of the act, authorizing the treasurer to collect the fees which, when paid, would remain in the state treasury for expenditure on state roads by the proper state authorities, and this because of section 42, which provides that if any part of the act should be declared unconstitutional, the legislature intended to pass the statute without that part.  Such a provision imposes upon courts the duty of supporting the legislative will as far as possible.

ID.—LEGISLATIVE INTENT—IMPOSITION OF TAX—DISPOSITION OF PROCEEDS.—The intent of the legislature was to impose such tax irrespective of the disposition of the proceeds.  This court must therefore give general effect to section 35 of such statute, no matter whether the "net proceeds" therein mentioned are to be expended by the state authorities alone, or not, if it is not vulnerable to other constitutional objection.

ID.—NATURE OF TAX IMPOSED—EXCISE OR PRIVILEGE TAX.—Such statute imposes an excise or privilege tax for the purpose of providing a fund for roads under the dominion of the state authorities.

ID.—FIXING TAX BY HORSEPOWER NOT BY VALUE OF MACHINE.—Such statute is not invalid because the license fee therein exacted is fixed according to the horsepower of the vehicle, not according to the value of the property, as the imposition is a privilege tax charged in the nature of compensation for the damage done to the roads of the state, and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it.

ID.—DOUBLE TAXATION—AD VALOREM TAX BY LOCAL AUTHORITIES.— The fact that an *ad valorem tax* is levied by local authorities upon all automobiles as property does not make this license or privilege tax by the state double taxation.

ID.—INCLUSION OF SAN FRANCISCO AS COUNTY—WHETHER INVALIDATES ACT.—Such statute does not violate subdivision 10 of section 25 of article IV of the constitution, by including San Francisco as a county for the purposes of the act and excluding all other cities.

ID.—DISPOSITION OF FUNDS—WHETHER STATUTE LOCAL OR SPECIAL.— Nor is the statute local or special in its nature, because the greater portion of the funds derived from the licenses are to be expended outside of the cities of the state. The state is charging for the privilege of using the roads for these highly destructive vehicles at a rate of speed not attainable by those which are propelled by animal power. The privilege is open alike to the rural and the urban owners of automobiles.

ID.—DUE PROCESS OF LAW—IMPOSITION OF TAX ACCORDING TO HORSE-POWER.—Such statute is not violative of the "due process" clause of the constitution in imposing the license-tax according to horse-power, for an automobile of high power is generally heavier and more destructive to roads than one of low power.

ID.—DETERMINATION OF HORSEPOWER BY DEPARTMENT OF ENGINEERING—DUE PROCESS.—Such statute is not violative of the "due process" clause of the constitution in providing for the determination of the horsepower of motor vehicles by the state department of engineering, for by section 3 of the act owners of such vehicles are given the right to present their case to that department.

ID.—TITLE OF STATUTE—WHETHER INCLUDES MORE THAN ONE SUBJECT.—Such statute is not open to the objection that it includes more than one subject in its title. All of its provisions are relevant to the regulation of automobiles; and in this sense they are expressive of but one subject, and all of the parts of the general object to be attained by the statute are sufficiently catalogued in the title.

ID.—DISCRIMINATION—ACT NOT INVALID AS DISCRIMINATORY.—Such statute is not illegally discriminatory, either because it applies to motor and not to other kinds of vehicles, or because it places dealers in a class by themselves and exacts from them a fee of fifty dollars if

they operate not more than five automobiles and ten dollars for every motor vehicle in excess of five so operated.

ID.—EXEMPTION OF NONRESIDENTS—WHETHER INVALIDATES ACT.—The exemption in such statute of nonresidents from paying the tax for a period of three months is not an unlawful one.

APPLICATIONS for Writs of Habeas Corpus, the first two of which were directed against D. A. White, Chief of Police of the City and County of San Francisco, and the other against Charles E. Sebastian, Chief of Police of the City of Los Angeles.

The facts are stated in the opinion of the court.

John L. McNab, and Timothy Healy, for Petitioner in No. 1840.

Stetson & Koford, Charles Fairall, and Percy E. Towne, *in pro. per.*, for Petitioner in No. 1841.

Edward G. Kuster, for Petitioner in No. 1842.

U. S. Webb, Attorney-General, Raymond Benjamin, Chief Deputy Attorney-General, John T. Nourse, Deputy Attorney-General, Ray E. Nimo, City Prosecutor, and D. R. Gardner, Assistant City Prosecutor of the City of Los Angeles, for Respondent.

MELVIN, J.—The petitioners in the above proceedings were arrested for violations of certain parts of that statute known as the "Motor Vehicle Act," approved May 31, 1913. It was charged against Douglas Mitchell that he drove and operated an automobile on a public highway in the city of Los Angeles without displaying a distinctive number assigned to the vehicle by the state's department of engineering as required by section 11 of said act. Alfred J. Schuler and Percy E. Towne were charged with driving their respective automobiles in the city and county of San Francisco, on public streets, without first complying with section 7 of the "Motor Vehicle Act," which relates to the paying of license fees for automobiles.

The matters were all heard together, as all three involved a consideration of the "Motor Vehicle Act" in its constitutional aspects.

The full title of the act is as follows:

"An act to regulate the use and operation of vehicles upon the public highways and elsewhere; to provide for the registration and identification of motor vehicles and for the payment of registration fees therefor; to provide for the licensing of persons operating motor vehicles; to prohibit certain persons from operating vehicles upon the public highways; to prohibit the possession or use of a motor vehicle without the consent of the owner thereof, and to prohibit the offer to or acceptance by certain persons of any bonus or discount or other consideration for the purchase of supplies or parts for motor vehicles, or for work or repair done thereon; to provide penalties for violations of provisions of this act, and to provide for the disposition of fines and forfeitures imposed thereon; to provide for the disposition of registration and license fees, fines and forfeitures collected hereunder; to provide for carrying out the objects of this act and to make an appropriation and to create a revolving fund therefor; and to repeal all acts or parts of acts either in conformity or in conflict with this act."

Section 7 requires the state treasurer annually to collect fees for the registration of automobiles according to their horsepower. The smallest of such fees is fixed at five dollars for every motor vehicle of less than twenty horsepower and the largest at thirty dollars for every one of sixty horsepower and above. The act provides for the classification of automobiles according to their horsepower by the state department of engineering. By section 10, nonresidents of the state who shall be only temporarily in California need not have their automobiles registered. A later section (No. 27) limits this period of exemption to three months. Section 11 prescribes the conspicuous display of the number of the motor vehicle on the front and back thereof. There are sections which fix the penalties for violations of the various provisions of the statute. Section 35 provides for the disposition of the funds collected under the operation of the act by the state treasurer. By it a scheme is created for the payment of the net receipts defined as "the balance of receipts remaining after payment of all expenses in the administration and enforcement" of the act. The money paid to the state treasurer shall go into the "motor vehicle fund" but one-half of the net receipts shall be "returned to the counties from which

received as determined by the places of residence of the persons to whom licenses are issued, and all such amounts returned shall be paid into the road funds of the several counties receiving the same.'' Other sections appropriate ten thousand dollars for the engineering department and five thousand dollars for the state treasurer to be used for the extra clerical service and materials necessary in the first instance to carry out the provisions of the act.

Petitioners contend that the act in question violates section 12 of article XI of the state constitution by imposing a tax upon the inhabitants and property of counties for county purposes. To this the attorney-general responds that the act is a police measure and that the fees imposed are in no sense taxes, but that even if they be so considered, the state is fully empowered to levy taxes for all road purposes under the authority conferred by the constitution. (Art. IV, sec. 36.)

It was stipulated that at the time of the argument, January 7, 1914, more than a quarter of a million of dollars had been collected by the state treasurer for registrations under the act. The attorney-general contends that because a police measure will produce a vast amount of revenue, that fact cannot affect the validity of the act if the power to pass either a police or a revenue law existed at the time of its passage.

That the act was passed, in part at least, as a police measure there can be small doubt. Its title characterizes it as an act ''to regulate the use and operation of vehicles,'' and many of its provisions are regulatory in their nature. That its exactions go far beyond the reasonable limits of a mere police measure we have no doubt. It must be conceded, of course, that the term ''police power'' is a very broad and flexible one and that the courts are by no means narrow and ''technical'' (as the common expression is) in their definition of that power, but where the legislature has clearly transgressed its authority and has passed a measure for purposes not within the reasonable scope of laws for the preservation of the public safety, health, or comfort, the courts have been compelled so to declare. The necessary expense involved in the regulatory provisions of the ''Motor Vehicle Act'' cannot be very great. The small initial appropriations for the extra clerical and other help to be employed in the state treasurer's office and by the department of engineering indicate that the

legislature anticipated no great outlay in the collection of fees, ascertainment of horsepower of motor vehicles, supply of stationery, numbers, and other things necessary in the carrying out of the purely police features of the statute. The repair of public roads is not a police measure, yet it is evident that the bill was passed for the principal purpose of raising revenue for use in the upkeep of such highways. In *San Francisco* v. *Liverpool & London & Globe Ins. Co.*, 74 Cal. 116, [5 Am. St. Rep. 425, 15 Pac. 380], it was held that a charge upon foreign insurance companies of a percentage of their premiums to be paid into the various county treasuries for the fireman's relief fund was not a police measure; that the imposition was a *tax;* and that the statute was enacted in violation of section 12 of article XI of the constitution of California.

In *Lassen County* v. *Cone*, 72 Cal. 387, [14 Pac. 100], it was held that a law prescribing a tax, levied upon sheep pastured in that county and not otherwise listed for taxation therein, could not be defended as a statute passed under the police power because the object of it was clearly not regulation but revenue. In *Plumas County* v. *Wheeler*, 149 Cal. 766, [87 Pac. 909], the same principle was announced, the court saying that if the amount charged for issuing the license there considered was in excess of the reasonable sum necessary for the administration of the law, the ordinance imposing the charge could not be defended as a police measure. It was held, however, that the court could not from the evidence before it declare the fee to be unreasonable. *In re Smith*, 143 Cal. 368, [77 Pac. 180], is authority for the same principle. In *State* v. *Lawrence* (Miss.), 61 South. 976, the supreme court of Mississippi was considering a problem very similar to the one before us. It is true that the attorney-general in that case did not attempt to uphold the statute under the state's taxing power, but the court's views upon the question of police power are very valuable. Among other things the court said:

"Under its police power the state has the undoubted right to regulate the use of its highways, included in which is the right to compel the registration and numbering of automobiles before they are permitted to be used on the highways. Such registration and numbering is necessary, in order

that automobiles may be readily identified, so that speed and other regulations may be enforced, and the right of all parties using the highways may be protected. Under this power the expense incident to a valid police regulation may be imposed upon the owner of the property or thing out of which the necessity for the regulation arises, but the expense thus imposed 'must be a reasonable, proper and fair exaction, when considered with reference to the object to be attained and surrounding facts.' (McGehee, Due Process of Law, 341.) Any clearly unnecessary expense imposed is unreasonable, and its imposition is an arbitrary exercise of governmental power.

"The only regulation contained in this statute is that automobiles be registered and numbered. The expense necessary to be incurred by the state in registering and numbering an automobile is less than $1.00; but the amount it desires to collect, in order that it may be reimbursed therefor, varies from $5.00 to $25.00, according to the horsepower of the engine by which the automobile is propelled."

The "Motor Vehicle Act" imposes a tax upon the inhabitants and property in every county and city and county in the state for the purpose, among others, of creating a fund, one-half of which, less expenses of administration, shall be paid into the road funds of the counties presumably for use upon the public roads under county supervision. It has been held that license taxes for county purposes are within the inhibitions of the section of the constitution last cited, and that the whole subject of county taxes has been delegated to the local authorities. (*San Francisco* v. *Liverpool & London & Globe Ins. Co.,* 74 Cal. 116, [5 Am. St. Rep. 425, 15 Pac. 380]; *People* v. *Martin,* 60 Cal. 155.) The opening and construction of city streets are "municipal purposes" (*Sinton* v. *Ashbury,* 41 Cal. 531; *Byrne* v. *Drain,* 127 Cal. 667, [60 Pac. 433]), and the construction and repair of county roads are "county purposes." Petitioners insist that efforts by the legislature to impose such taxes are void. (*Fatjo* v. *Pfister,* 117 Cal. 85, [48 Pac. 1012]; *McCabe* v. *Carpenter,* 102 Cal. 470, [36 Pac. 836].)

It is argued in opposition to this view that while there was much force in the authorities cited when those opinions were rendered, the adoption of section 36 of article IV of the con-

stitution has entirely changed the law with reference to state control of highways, and that under the present constitution the legislature may by any means which it may choose to select, provide for the construction and maintenance, in whole or in part, of the roads of the state.   The section in question is as follows:

"The legislature shall have power to establish a system of state highways or to declare any road a state highway, and to pass all laws necessary or proper to construct and maintain the same, and to extend aid for the construction and maintenance in whole or in part of any county highway."

It is unnecessary in the present proceeding to discuss the bearing of this constitutional provision upon the act in question, because we are not concerned with the distribution of the revenue which the state has collected and may collect in the enforcement of the statute.

Conceding for the purposes of argument that section 35 of the act is void because it assigns part of the tax to be collected to the various counties, we would be compelled nevertheless to uphold section 7 authorizing the treasurer to collect the fees which, when paid, would remain in the state treasury for expenditure on state roads by the proper state authorities, and this because of section 42 which provides that if any part of the act should be declared unconstitutional, the legislature intended to pass the statute without that part.   Similar sections have been subjects of interpretation in other states and it seems to be the consensus of belief that they impose upon the courts the duty of supporting the legislative will as far as possible.   (*State* v. *Carter,* 174 Ala. 266, [56 South. 977] ; *Borgnis* v. *Falk,* 147 Wis. 327, [37 L. R. A. (N. S.) 489, 133 N. W. 209 ; *State* v. *Clausen,* 65 Wash. 156, [37 L. R. A. (N. S.) 466, 117 Pac. 1114] ; *State* v. *Montgomery* (Ala.), 59 South. 302.)

Measuring the legislative purpose by this rule we must say that there was an intent to impose this tax irrespective of the disposition of the proceeds.   We must therefore give general effect to section 35 no matter whether the "net proceeds" therein mentioned are to be expended by the state authorities alone, or not, if it be not vulnerable to other constitutional objection.   The contention is made (and correctly made) that it imposes an excise tax or privilege tax for the

CLXVII Cal.—19

purpose of providing a fund for roads under the dominion of the state authorities. Similar laws have been upheld in other states upon exactly that theory. In *Kane* v. *State*, 81 N. J. L. 594, [Ann. Cas. 1912D, 237, 80 Atl. 453], a statute very much like this was under review. A resident of another state was attacking the New Jersey law which imposed the tax upon the owners of all automobiles using the public roads of New Jersey. The law was sustained. It was conceded that under the proofs before the court the statute was a revenue measure and not one passed purely in the exercise of the state's police power. There, as here, the point was made that the act was void because it sought to fix the amount of the tax arbitrarily and not in accordance with the value of the property. The court, among other things, said:

"The charging of an annual sum for the use of its highways by automobiles, instead of a mileage fee, is clearly a matter within the discretion of the state. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privilege it bestows. (*Home Insurance Co.* v. *New York*, 134 U. S. 594, [33 L. Ed. 1025, 10 Sup. Ct. Rep. 593].) The only limit upon its power is that the amount charged shall not be unreasonable; and there is no suggestion that such a condition is created by the present law.

"We conclude, therefore, that the contention of the plaintiff in error, that the act of 1908 contravenes the federal constitution, is without substance.

"It is further contended, on behalf of the plaintiff in error, that the imposition provided by the act of 1908 is a property tax, and invalid because it is imposed without regard to the value of the property upon which it is laid. What we have already said disposes of this contention. The character of the imposition is not determined by the mode adopted in fixing its amount. (*Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217, [35 L. Ed. 994, 12 Sup. Ct. Rep. 121].) The imposition is a license or privilege tax charged in the nature of compensation for the damage done to the roads of the state by the driving of these machines over them and is properly based, not upon the value of the machine, but upon the amount of destruction caused by it." (See, also, *Cleary* v. *Johnston*, 79 N. J. L. 49, [74 Atl. 538].) The fact that an *ad valorem*

tax is levied by local authorities upon all automobiles as property does not make this double taxation, which only occurs when the same property is taxed twice by the same government during the same period.    (37 Cyc. 753–754; *San Francisco* v. *Fry,* 63 Cal. 470; *Chesebrough* v. *San Francisco,* 153 Cal. 564, [96 Pac. 288]; *Ex parte Mirande,* 73 Cal. 367, [14 Pac. 888]; *State* v. *Ingalls,* (N. M.) 135 Pac. 1117; *Jackson* v. *Neff,* 64 Fla. 327, [60 South. 350].)

Very recently the supreme court of New Mexico dealt exhaustively with a law very similar to this one and held it to be constitutional.    (*State* v. *Ingalls,* (N. M.) 135 Pac. 1117.)

There is no merit in the suggestion of the petitioners that the statute violates subdivision 10 of section 25 of article IV of the constitution by including San Francisco as a county for the purposes of the act and excluding all other cities.    Nor is it local or special in its nature, because the greater portion of the funds derived from the licenses are to be expended outside of the cities of the state.    The state is charging for the privilege of using the roads for these highly destructive vehicles at a rate of speed not attainable by those which are propelled by animal power.    The privilege is open alike to the rural and the urban owners of automobiles.

The "Motor Vehicle Law" is also attacked as violative of the "due process" clause of the constitution in imposing a license-tax according to horsepower.    In this behalf such cases are cited as *Ellis* v. *Frazier,* 38 Or. 462, [53 L. R. A. 454, 63 Pac. 642]; and *Chicago* v. *Collins,* 175 Ill. 445, [67 Am. St. Rep. 224, 49 L. R. A. 408, 51 N. E. 907].    Upon analysis these authorities are not so greatly opposed to those which we cite as sustaining statutes similar to the one which we are now considering.    The first, an Oregon case, was based partly upon the assumption that a bicycle does not necessarily tend to the destruction of the highways.    There were many differences between that law and this, one being that the statute of Oregon applied only to a part of the counties of the state.    The Alabama case related to a tax on wagons levied for general purposes of construction and maintenance of roads and bridges. The amount was the same for all vehicles without distinction. The impost there considered had none of the features of a privilege tax.    In *City of Chicago* v. *Collins,* the court was concerned not with a state law but with a municipal ordinance

imposing a tax upon all vehicles, the revenue therefrom to be applied to building and maintaining streets. It was decided that the city of Chicago held its streets in trust for the use of the public for purposes of travel thereon and that no special class of travelers might be charged for the privilege of passing over such streets in a lawful manner. It was also held that the owners of vehicles would be doubly taxed if the ordinance should be given effect. In the statute which we are endeavoring to construe there is an attempt to apportion the charge with some reference to the destructive or wearing power of each motor vehicle. While we cannot say that the relative horsepower of vehicles is the most scientific basis of measurement of their potency for injury to the roads, we cannot say that it is without justification. An automobile of high power is generally heavier than one of low power, and it needs no argument to demonstrate that the damage accomplished by the heavier motor vehicle is, generally speaking, the greater. Acts imposing the license-tax on a basis exactly similar to that adopted by the legislature of California have been sustained. (*Bozeman* v. *State*, 7 Ala. App. 151, [61 South. 604]; *Kennamer* v. *State*, 150 Ala. 78, [43 South. 482].)

The duty of determining the horsepower of each motor vehicle for the purposes of this act has been assigned to the department of engineering. The objection is made that this takes the property of owners without a hearing and without right of appeal and that it therefore violates the rule with reference to due process of law. By section 3 of the act every owner of a motor vehicle which shall be operated or driven on a public thoroughfare shall cause the filing with the state treasurer by mail or otherwise of an application for registration of such vehicle, containing certain data, including the name of the maker, the number, if any, affixed by the manufacturer, the character of the motive power and its amount stated in terms of horsepower. Thus the owner is given the right to present his entire case to the department of engineering. Should that department arbitrarily refuse to act upon his application he would have the right to compel them to do so by *mandamus*. Should they act erroneously he would also have his remedy in the courts. Having a chance fully to present all the facts to the department of engineering he is not deprived of due process of law. (*Pittsburg etc. Ry. Co.* v.

*Backus*, 154 U. S. 426, [38 L. Ed. 1031, 14 Sup. Ct. Rep. 1114].)

The further objection is made that the act includes more than one subject in its title, particular attention being called to section 31, which prohibits chauffeurs from accepting gratuities or payments by way of bonus from dealers from whom they may purchase supplies, and section 20 which contains certain "rules of the road" to be observed by all drivers of motor vehicles. But under the broad interpretation which we have given to section 24 of article IV of the constitution, the act does not fall before the criticism levelled at it. All of its provisions are relevant to the regulation of automobiles. In this sense they are expressive of but one subject and all of the parts of the general object to be attained by the statute are sufficiently catalogued in the title. (*Law* v. *San Francisco*, 144 Cal. 388, [77 Pac. 1014] ; *County of Los Angeles* v. *Spencer*, 126 Cal. 671, [77 Am. St. Rep. 217, 59 Pac. 202] ; *Robinson* v. *Kerrigan*, 151 Cal. 50, [121 Am. St. Rep. 90, 12 Ann. Cas. 829, 90 Pac. 129] ; *Ex parte Maginnis*, 162 Cal. 202, [121 Pac. 723] ; *Ex parte Hallawell*, 155 Cal. 114, [99 Pac. 490].) Section 20, containing certain rules of the road, is clearly within the purview of the general objects to be attained by the Motor Vehicle Act and is covered descriptively by the general caption "An Act to Regulate the Use and Operation of Vehicles," etc.

Nor is the act illegally discriminatory either because it applies to motor vehicles and not to other kinds or because it places dealers in a class by themselves and exacts from them a fee of fifty dollars if they operate not more than five automobiles and ten dollars for every motor vehicle in excess of five so operated. To the first objection the answer is that the power of the legislature being plenary in the matter of imposing this privilege tax, it may designate any class properly subject to such exaction. For the same reason it may exempt any class. (*In re Wilmerding*, 117 Cal. 287, [49 Pac. 181].) No doubt the legislature took into consideration the fact that motor cars in the possession of dealers are usually kept for sale and are not used in the ordinary way, but merely for purposes of "demonstration" and exhibition to intending purchasers. Dealers are therefore placed in a class by themselves.

Nor is the exemption of nonresidents from paying the tax for a period of three months an unlawful one. Similar exemptions have been sustained upon the principle that the nonresidents' are presumed to have paid all necessary licenses in their respective places of abode, and that their use of the roads in the territory subject to the provision of the act is usually but temporary. In *Fort Smith* v. *Scruggs,* 70 Ark. 549, [91 Am. St. Rep. 100, 58 L. R. A. 921, 69 S. W. 679], that was the ground upon which the exemption was upheld. That case is also a well-reasoned authority upon the general subject of the state's right to tax the owners of vehicles for the privilege of using the streets. (See, also, *Des Moines* v. *Bolton,* 128 Iowa, 108, [5 Ann. Cas. 906, 102 N. W. 1045].) There is an analogy between this exemption of nonresidents and the familiar exception of travellers from ordinances prohibiting the carrying of concealed weapons.

No other objections to the constitutionality of the act require discussion.

Let the writs be dismissed and the prisoners remanded.

Henshaw, J., Shaw, J., Lorigan, J., Angellotti, J., and Sloss, J., concurred.