THE NEW YORK, PHILADELPHIA & NORFOLK TELEGRAPH COM-PANY *vs.* JOHN I. DOLAN, Collector.

LICENSES—CITY CHARTER HELD TO IMPOSE MERELY A LICENSE FEE, AND NOT A REAL ESTATE TAX ON PROPERTY OF PUBLIC UTILITIES.

*Wilmington City Charter*, § 80, as amended by *Act Gen. Assem. March 25, 1907 (24 Del. Laws, c. 177)* § 16, and *Act Gen. Assem. April 7, 1913 (27 Del. Laws, c. 205)* § 1, providing for assessment of all street railway, tele-phone, telegraph, or electric power lines and pipes or conduits used in carry-ing water located on public streets according to a certain rate on every hun-dred dollars of the estimated value of the property, *held* to impose merely a license fee for privilege of using streets, and not a real estate assessment and tax, with no opportunity for a hearing on the part of the taxpayer.

(*January* 16, 1923.)

WOLCOTT, Chancellor, HARRINGTON, RICHARDS and RODNEY, J. J., sitting.

*John W. Huxley* and *George N. Davis* for plaintiff in error. *Horace G. Eastburn* for defendant in error.

Supreme Court, January Term, 1923.

Error to Superior Court, New Castle County.

The defendant in error, a tax collector of the city of Wilmington, brought suit against the plaintiff in error for taxes due to said city for the years 1913 to 1918, inclusive. To the declaration in said case the plaintiff in error filed a demurrer. The demurrer raised questions as to the construction and constitutionality of the act under which the taxes were laid. The question was heard before the court in *banc* and pursuant to its opinion the demurrer was overruled by the Superior Court, final judgment taken thereon and this writ of error sued out.

The statutory provisions covered by the argument are *Section* 80 of *Chapter* 207, *vol.* 17, *Laws of Delaware*, known as the charter of the city of Wilmington, and two amendments thereto, one approved March 25, 1907 (*Section* 16 of *Chapter* 177, *Vol.* 24, *Laws of Delaware, p.* 353), and the other approved April 7, 1913, being *Chapter* 205, *Vol.* 27, *Laws of Delaware, p.* 525.

It is contended by the plaintiff in error that the tax imposed is a real estate tax with no opportunity for a hearing on the part of the taxable; that the statutory assessment on its poles and wires of from $6,600 to $7,300 a mile is arbitrary and confiscatory, and, therefore, the act is unconstitutional.

The appellee contends, however, that the tax in question is not a real estate tax, but a franchise tax or license fee imposed because of the use of the public streets, is not confiscatory and is violative of no constitutional requirement.

RODNEY, J., delivering the opinion of the Court:

The entire question here involved is one of statutory interpretation. The research of counsel has, admittedly, disclosed no statute of any other jurisdiction bearing any similarity to the one before this court, nor has a thorough examination by this court brought any to light. Citations of other courts, can, therefore, be of no assistance, and we must look to the statute itself for its true meaning. While the issue is a narrow one, the question is important and interesting, and its answer may, like most cases of pure statutory interpretation, be justly liable to a charge of prolixity.

A critical examination of the section of the charter of Wilmington in question, tracing the amendments thereto in their turn, can lead to no other conclusion than that the payment required to be made by telegraph companies is in the way of a license fee and is not a real estate assessment and tax.

The original section is as follows (*Section* 80, *c.* 207, *vol.* 17):

"All real estate within the said city shall be assessed, except real estate belonging to the United States, the state of Delaware, New Castle county, or the city of Wilmington, cemeteries and burying grounds, churches and meeting houses belonging to any religious society and used for public worship, real estate owned and used for charitable purposes by the associations known as the 'Trustees of the Home for Friendless and Destitute Children in the City of Wilmington,' 'Home for Aged Women,' 'Sisters of Charity,' and buildings owned and occupied by fire companies. The assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated value of the property assessed, if sold for cash, and so *pro rata*. The real estate shall be described with sufficient particularity to be clearly identified, the principal improvements thereon, if any, to be also specified. Real estate, the owner or owners of which cannot be found or ascertained, may be assessed to 'owner unknown.' Every male citizen above the age of twenty-one years shall be rated for a capitation or poll-tax in addition to the assessments of his real estate, at a capital not exceeding two thousand dollars nor less than one hundred dollars."

On March 25, 1907, the above section was amended by inserting between the word "companies" in the tenth line of the original section and the word "the" in the eleventh line a long amendment, of which the following are the only material parts:

"The Mayor and Council of Wilmington be and it is hereby given express authority to collect and receive annually from telegraph, telephone, water, electric light, gas, street railway and heat and power companies, operating within the city of Wilmington, the taxes hereinafter specified. * * *

"(d) From all persons, firms, associations or corporations owning or operating any telephone or telegraph company business within the limits of the city of Wilmington, the sum of one hundred dollars per mile for each mile of the streets of said city used by such telephone or telegraph company for its wires and poles overhead. * * *

"(e) From all persons, firms, associations or corporations owning or operating any electric light, telephone, or telegraph company within the limits of the city of Wilmington the sum of sixty dollars per mile for each mile of the streets of said city used by any such company for underground conduits. * * *

"(g) * * * (3) The taxes provided for by this amendment shall be in lieu of and instead of all other taxes, licenses and revenue imposed, required or derived from any conduits, pipes, mains, ducts, wires, roadbeds, tracks,

32 Del.] N. Y., Phila. & Nor. Tel. Co. vs. Dolan 187

Opinion.

ties, poles, cables, lamps, lights and all other equipments, materials and apparatus belonging to any such persons, firms, associations or corporations, in, or placed in, on or over the streets of the city of Wilmington."

It is asserted in the brief of the appellee that the license fee or franchise tax imposed by the foregoing amendment was paid by the appellant and other companies similarly affected until the year 1913, when the act now under construction was passed.

On April 7, 1913, the act under construction was approved and became a law. Its effect is very curious. Its drafting is crude and inartistic, but its intent is obvious from every consideration. Notwithstanding the fact that the amendment of 1907 (volume 24, c. 177, § 16) had inserted 99 additional lines between the word "companies" in the tenth line and the word "the" in the eleventh line of the original act, the new law of 1913 paid no attention to this renumbering and added an amendment consisting of 148 lines, making them to be inserted between the word "companies" in the tenth line and the word "every" in the eighteenth line, oblivious to the fact that, while the word "every" did appear in the eighteenth line of the original section, ninety-nine lines had been inserted before it by the act of 1907. Since both the amendment of 1907 and the amendment of 1913 were inserted immediately after the word "companies" in the tenth line, I will assume for preliminary consideration that the amendment of 1913 was in place and stead of that of 1907 and repealed the first amendment.

Upon this assumption, therefore, the statute since 1913 has read, in so far as this appellant company is concerned as follows:

"Sec. 80. All real estate within the said city shall be assessed, except real estate belonging to the United States, the state of Delaware, New Castle county, or the City of Wilmington, cemeteries and burying grounds, churches and meeting houses belonging to, any religious society and used for public worship, real estate owned and used for charitable purposes by the associations known as the 'Trustees of the Home for Friendless and Destitute Children in the City of Wilmington,' 'Home for Aged Women,' 'Sisters of Charity,' and buildings owned and occupied by fire companies.

"All street railway lines, all gas mains, all electric light poles and wires, all telephone or telegraph poles and wires, all poles and wires used in transmitting heat, light or power, all pipes, conduits, wires or other underground construction, used as electric light, telephone or telegraph lines, or in transmitting electric light, heat or power, and all pipes or conduits used in carrying

water, located on the public streets in the City of Wilmington or on private property not otherwise taxed, excepting those now exempted from taxation by law, shall be assessed in the following manner:   *   *   *

"(c)   All electric light, telephone or telegraph poles and wires overhead, used as electric light, telphone or telegraph lines, located in the streets of the City of Wilmington shall be assessed per mile or fraction thereof, for each mile of the streets used, but such assessment shall not be less than six thousand and six hundred dollars and not more than seven thousand three hundred dollars per mile.   *   *   *

'(e)   All telephone, telegraph or electric light underground conduits, or wires, pipes, conduits or other underground construction used in transmitting heat light or power, located in the streets of the city of Wilmington, shall be assessed per mile or fraction thereof, for each mile of the streets of the city used, but such assessment shall not be less than four thousand dollars and not more than four thousand four hundred dollars per mile.   *   *   *

"Every person, firm, association or corporation owning or operating any street railway, gas mains, electric light, heat and power, telephone or telegraph lines, and water pipes in the City of Wilmington, mentioned in this section, shall on or before the first day of April of each and every year, file with the clerk of the council of the said City of Wilmington, a sworn statement which shall set out the following:   *   *   *

"(2)   In the case of every such person, firm, association or corporation owning or operating any telegraph, telephone, gas, water, electric light, or heat and power business, system, or plant, shall state the total number of miles of the streets of the city of Wilmington used by every such person, firm, association or corporation, overhead and underground, in its said business.

"(3)   In case of an individual, firm or association transacting any such business, said statement shall be verified by the oath or affirmation of any one of the persons, owning or operating the same; and in the case of every corporation owning or operating any such business, said statement shall be verified by the oath or affirmation of the treasurer of every such corporation.   Said taxes shall be due and payable to the Mayor and Council of Wilmington annually at the same time that the city and school taxes due said city are payable, and shall be subject to the same rebates, deductions, discounts, allowances and penalties as are now or hereafter may be provided by law in reference to such city and school taxes.

"The assessment of real estate shall be made according to a certain rate in and upon every hundred dollars of the estimated value of the property assessed, if sold for cash, and so *pro rata*.   All assessments upon real estate shall be so made as to show separately the valuation of the improvements upon and the total valuation of the property assessed, and such property shall be described with such particularity as will enable it to be clearly identified, and the name of the owner, or last owner or reputed owner shall be given, if known. Such name shall be regarded as an aid to identify such property, but a mistake in the name of the owner, last known owner or reputed owner, or the absence of name, shall not affect the validity of the assessment or any tax based thereon.   *   *   *

"Sec.   2.   That the board of assessment, revision and appeals for the City of Wilmington, shall be and they are hereby authorized to make the first

assessment on street railway lines, gas mains, electric light poles and wires, poles and wires used in transmitting heat, light or power, pipes, conduits and other under ground construction, used as electric light, telephone or telegraph lines or in transmitting electric light, heat or power, and all pipes or conduits used in carrying water, as provided for in this Act, at any time prior to the thirty-first day of May, A. D. 1913, for the next fiscal year, previous notice of such intended assessment, designating the time at which the same will be made, being given by the Board in writing to the owner, owners, operator or operators of said property:

"Sec. 3. That *Section* 16 of *Chapter* 177, *Volume* 24, *Laws of Delaware*, approved March 25, A. D. 1907, in so far as it is inconsistent herewith, as well as all other acts or parts of acts inconsistent herewith, are hereby repealed."

In the brief of the appellant and at the argument much stress was laid upon the fact that the amendment of 1913 contained the provision that real estate assessment "should be made according to a certain rate in and upon every hundred dollars of the estimated value of the property assessed, if sold for cash, and so *pro rata*," and, it was argued, since the act of 1913 was solely for the purpose of taxing appellant and similar companies, the intention was clearly shown to impose a real estate tax.

The suggestion and argument lose all their force and the reason of the inclusion of the above quoted words in the amendment of 1913 become manifest when it is seen that the identical words appeared in the original charter between the word "companies" in the tenth line and the word "every" in the eighteenth line, and that all these words were stricken out in the original act by the 1913 amendment, and their re-enactment in that amendment was a desirable step, and they became operative, not necessarily to the words of the amendment, but to the remaining parts of the original act.

Especial attention must be drawn to *Section* 3 of the act of 1913. This repealed only such parts of the 1907 amendment as were inconsistent with it. The 1907 amendment was concededly not a real estate assessment, but imposed a license or franchise tax or rather a privilege tax for the use and occupation of the streets. This is admitted to be true, and, indeed, from the context of the amendment, cannot well be denied. The authorities are uniform in holding that the imposition of a franchise or license tax does not conflict with the laying of a real estate tax. 26 *R. C. L.* 266;

*Ex parte Schuler*, 167 *Cal.* 282, 139 *Pac.* 685, *Ann. Cas.* 1915C, 706; *Denver City Ry. Co. v. Denver*, 21 *Colo.* 350, 41 *Pac.* 826, 29 *L. R. A.* 608, 52 *Am. St. Rep.* 239; *Harder's Fireproof Storage & Van Co. v. Chicago*, 235 *Ill.* 58, 85 *N. E.* 245, 14 *Ann. Cas.* 536; *Northwestern, etc., Ins. Co. v. Lewis & Clarke County*, 28 *Mont.* 484, 72 *Pac.* 982, 98 *Am. St. Rep.* 572. See also notes to 131 *Am. St. Rep.* 875, and 60 *L. R. A.* 367.

If, therefore, the tax imposed by the 1913 amendment is a real estate tax, the license or franchise tax imposed by the 1907 act remains in full force and both are fully operative. If the tax imposed by the 1923 amendment is a franchise or license tax, all inconsistent provisions of the 1907 act are repealed and the 1913 act remains alone.

When we consider that the purposes of the 1907 and 1913 acts are the same, we are inclined to the opinion that the act of 1913 was intended as a repealer of the 1907 act, but we are irresistibly forced to this conclusion when we consider the effect of both being in operation at the same time.

Both acts provide that the words of the respective amendments shall be inserted after the word "companies" in the tenth line of the original act. That this is an impossibility is immediately apparent, as it would be impossible even to reduce the original act and amendments to writing in such a way as to secure the insertion of the amendments in the places designated for such insertion.

That the tax collectable under the 1913 amendment is a privilege tax imposed by reason of the occupancy of the public streets by the plaintiff in error and is not an *ad valorem* tax seems to us quite evident.

It is very obvious that by neither the act of 1907 nor the act of 1913 were the taxes to be paid by the appellant based on cost of installation and, therefore, on valuation. In the 1907 act, a tax of $100 per mile, was imposed on overhead wires and $60 per mile on wires in underground conduits. It is a matter of common knowledge that the cost of underground conduits greatly exceeds that of overhead wires. So, too, in the act of 1913. By paragraph (c) the overhead wires are made liable to an assessment of from

$6,600 to $7,300 per mile, while by paragraph (e) wires in conduits or other underground construction are liable to an assessment of from $4,000 to $4,400 per mile. It seems to be fairly inferable that the Legislature intended the additional burden occasioned by the use of the streets by overhead wires to be met by a higher license tax.

The method of arriving at the amount of the tax is unusual, but is not to be condemned by that fact alone if it transgresses no constitutional requirement, is not confiscatory and fairly meets the usual tests required for taxing measures. In the absence of binding or of the most persuasive authority, we are not inclined to say that an elastic privilege tax raising or lowering as the general tax on all individual citizens raises or lowers and in the same proportion is necessarily improper.

We are, therefore, of the opinion that the act of 1913 imposed a privilege tax upon the plaintiff in error, based in part at least, upon the use and occupation of the public streets.

The foregoing conclusion is borne out by another view of the act of 1913. By the first section of the act, the public utilities therein mentioned "located on the public streets of the city of Wilmington or on private property not otherwise taxed" are subject to the assessment set out in said act. Whatever implication arises from the quoted words as indicating that a general real estate assessment and tax is intended, is negatived, especially in so far as the plaintiff in error is concerned, by the method of arriving at the tax. Annually a sworn statement must be filed by each of the named utilities. In the case of a street railway alone is it required to give the number of miles of track in the city of Wilmington. In the case of every other utility it is only required to give the number of miles of the streets of the city of Wilmington used in the business of the said utility. On the basis of this number of miles of streets used is fixed, as we conceive, the tax for the license or privilege of using said streets.

The only remaining question, therefore, is, whether or not the license fee or privilege tax imposed by the act of 1913, is so excessive as to be confiscatory. This question was not argued before

this court and indeed there is nothing in the record to sustain such an argument or to give this court any assistance in arriving at a conclusion. The case comes before this court on a demurrer to a declaration. There are no admitted facts of valuation, and there is no evidence in the case. This court, therefore, does not pass upon this question, and the judgment of the court below is affirmed.

NOTE. This case was affirmed, on appeal, by the Supreme Court of the United States in 44 *U. S. Sup. Ct. Rep.* 450.